**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| ROBERT PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:26-cv-00655 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, Wells Fargo Bank, N.A.[1] ("Wells Fargo" or "Defendant") by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss.

## I. INTRODUCTION

After more than 38 years with Wells Fargo and its predecessors, Robert Propst retired in August 2023, approximately one month after receiving a mid-year performance rating he believes he did not deserve. Now, nearly three years later, he brings this action alleging various federal and state law claims. His Complaint attempts to transform his choice to retire into three causes of action against Wells Fargo. But the factual allegations in the Complaint are insufficient to state any of the claims he attempts to bring and Wells Fargo requests dismissal of this action.

Count I asserts wrongful discharge in violation of North Carolina public policy. But Propst's Complaint confirms he retired and confirms that Wells Fargo did not terminate his employment. North Carolina does not recognize constructive discharge as a basis for a wrongful discharge claim and for this reason alone, Count I must be dismissed. Similarly, any claim of

[1] Wells Fargo & Company is not the proper defendant in this action. Wells Fargo Bank, N.A. employed Propst.

retaliation independently fails because the North Carolina Equal Employment Practices Act ("NCEEPA") does not support a public-policy claim for retaliation.

Count II asserts retaliation and associational race discrimination under 42 U.S.C. § 1981. Both theories rest principally on Propst's allegation that a single mid-year performance rating and Propst's retirement, recast as a constructive discharge, constitute adverse employment actions. The 2023 mid-year performance rating did not reduce his compensation, title, responsibilities, or benefits, which precludes Propst's ability to demonstrate that he suffered an adverse action based on the mid-year review. As for constructive discharge, the conditions Propst describes were not objectively intolerable. His retirement therefore cannot serve as an adverse action under either § 1981 theory. Just as important, Propst's own assertions undermine but-for causation, which is fatal to any § 1981 claim. The Complaint asserts that Wells Fargo's conduct occurred because of his age, disability accommodation, sexual orientation, a forced ratings curve, among other factors—not race alone.

In Count III, Propst attempts to state a negligent retention and supervision claim, but he fails to allege facts to establish the elements of that claim. Importantly, to state a negligent retention claim, Propst must identify and allege facts to support an underlying common law tort. Discrimination and retaliation do not qualify, and calling his supervisor's conduct "tortious interference" does not cure the problem. Propst does not plausibly allege that his supervisor induced Wells Fargo to end its relationship with him or that Wells Fargo knew of any alleged unfitness before the conduct at issue.

Wells Fargo submits that Propst has failed to allege sufficient facts to state any claim against Wells Fargo and each count should be dismissed.

## II. FACTUAL ALLEGATIONS[2]

Propst joined Wells Fargo's predecessor in April 1985 and, through a series of mergers, remained employed by Wells Fargo until August 2023. (ECF 1 at ¶¶ 9–10.) He rose to the position of Senior Vice President after over roughly 38 years of service and alleges a consistently strong performance record throughout his tenure with the company. (*Id.* at ¶¶ 11–13.) Beginning in 2017, Propst helped lead Wells Fargo's Rebuilding Trust Office, a compliance function organized in response to a Consumer Financial Protection Bureau consent order, (*id.* at ¶¶ 15–17), and he alleges that his team's work contributed to the lifting of that consent order in September 2021. (*Id.* at ¶ 19.) At the time of his separation, Propst alleges a base salary of $201,000 and annual bonus compensation of approximately $95,000. (*Id.* at ¶ 14.)

In the fall of 2022, following a reorganization, Propst and his team were assigned to report to Sandra Vasquez, who was based in Chicago. (*Id.* at ¶¶ 21–22.) Propst alleges that Vasquez questioned the value of his team, declined to meet with his team in person, and marginalized Propst and his team within the company. (*Id.* at ¶¶ 22–24.)

Propst also maintains that he has experienced diminished vision since 2016, that Wells Fargo recognized the condition, and that Wells Fargo approved accommodations for him, including a remote work arrangement that remained in place through his separation. (*Id.* at ¶¶ 25–27.) He alleges that after his reassignment, Vasquez pressured him to work from the office, notwithstanding that approved accommodation and subjected his attendance to intense scrutiny. (*Id.* at ¶¶ 29–32.)

Propst further alleges that Vasquez made comments concerning his age, length of employment, and retirement, (*id.* at¶¶ 34–35, 37), and that she made remarks he characterizes as

---

[2] Only for the purposes of this Motion to Dismiss, Wells Fargo accepts as true Propst's allegations in the Complaint as required under the Federal Rules.

reflecting animus based on his sexual orientation and on his marriage to a Black man. (*Id.* at ¶¶ 39–41.) Additionally, he alleges that she treated his predominately Black team less favorably than comparable employees. (*Id.* at ¶¶ 42–43.)

In 2023, Propst claims that he received a mid-year performance rating of "Inconsistently Meets Expectations," which he characterizes as the first negative rating of his career and attributes to a forced "bell curve" rather than his performance. (*Id.* at ¶¶ 45–46.) He alleges that, on unknown dates, Propst complained to Vasquez, to HR, and to Ryan Baum, a senior leader at Wells Fargo, regarding discrimination, interference with his accommodation, and the treatment of his team. (*Id.* at ¶¶ 33, 49, 51.) Propst alleges that no remedial action followed. (*Id.* at ¶¶ 44, 56.)

Critically, Propst does not claim that Wells Fargo terminated his employment. Rather, he confirms that he retired from his employment. He maintains instead that the cumulative conditions rendered his continued employment intolerable, (*id.* at ¶¶ 55, 57), and that, "on or about August 11, 2023, at age 63" he was "forced into early retirement and thereby constructively discharged." (*Id.* at ¶ 57.) He alleges that he intended to work until age 67, (*id.*), and that Wells Fargo thereafter placed a substantially younger employee into his former role or a similar position. (*Id.* at ¶ 58.)

## III. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*

Conversely, "[a] complaint may fail to state a claim upon which relief may be granted in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim, … or second, by failing to allege facts to support a legal cause of action." *See Flores v. Gmri, Inc*., 2016 WL 7264845, at *2 (M.D.N.C. 2016); *see Halloway v. Pagan River Dockside Seafood., Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

## IV. ARGUMENT

### A. COUNT I: NORTH CAROLINA DOES NOT RECOGNIZE CONSTRUCTIVE DISCHARGE AS A BASIS FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY AND THIS CLAIM MUST BE DISMISSED

Propst does not allege that Wells Fargo fired him. He confirms that he retired. Because an actual discharge is a threshold element of a wrongful discharge in violation of public policy claim under North Carolina law, and because the Supreme Court of North Carolina has expressly held that a constructive termination will not support such a claim, Count I must be dismissed in its entirety and with prejudice.

North Carolina is an employment "at will" state, meaning that employees can be fired at any time for any reason, or even no reason, by an employer. *See Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). *Coman* recognized a narrow exception to that rule. There, the Court held "there can be no right to terminate [a contract at will] for an unlawful reason or purpose that contravenes public policy." *Id.* The critical word in *Coman* is ***terminate***.

Propst alleges that "on or about August 11, 2023, at age 63, he was forced into early retirement and thereby constructively discharged." (ECF 1 at ¶ 57.) He describes his separation as

a "constructive discharge" throughout the Complaint (*id*. at ¶¶ 10, 44, 55-57, 68-69, 77-78, 84-85, 91-92, 95-96), and he pleads the constructive discharge standard itself—that an employer "deliberately makes or allows an employee's working conditions to become so intolerable that a reasonable person in the employee's position would feel compelled to resign." (*Id*. at 68.) Each of Propst's four subsections under Count I, age (*id*. at ¶¶ 70-79), disability (*id*. at ¶¶ 80-85), race retaliation (*id*. at ¶¶ 86-92), and sex (*id*. at ¶¶ 93-95), identifies the constructive discharge as the operative adverse employment action. Propst's reliance on various protected characteristics does not alter the analysis. Constructive discharge does not provide a basis for the wrongful discharge claim and Count I must be dismissed.

The Supreme Court of North Carolina resolved the precise question presented here in *Whitt v. Harris Teeter, Inc.* 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting the reasoning of McCullough, J., dissenting, in *Whitt v. Harris Teeter, Inc.*, 165 N.C. App. 32, 50, 598 S.E.2d 151, 162 (2004)). The plaintiff brought claims for wrongful discharge in violation of public policy based on retaliation and a hostile work environment, alleging that she had been constructively discharged. *Id.* Reversing the Court of Appeals, the North Carolina Supreme Court held that North Carolina does not recognize a claim for wrongful discharge in violation of public policy where the termination is a constructive one. *Id.*

This Court applies North Carolina law and "should not create or expand a [s]tate's public policy." *Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314 (4th Cir. 2007). This Court has therefore held that *actual* termination "continues to be a threshold allegation necessary to state a claim for relief for wrongful discharge in violation of the public policy of North Carolina," and that federal courts "are unwilling to expand the claim to include constructive discharges in the absence of express allowance by North

Carolina's state courts." *Riepe v. Sarstedt, Inc.*, No. 5:09-CV-00104, 2010 WL 3326691, at *6 (W.D.N.C. Aug. 23, 2010); *see McFadden v. Trend Cmty. Health Servs.*, 114 F. Supp. 2d 427, 430–31 (W.D.N.C. 2000) (dismissing with prejudice a claim for "constructive discharge in violation of public policy" under N.C. Gen. Stat. § 143-422.2).

Most directly on point is *Batchelor v. City of Wilson*, 747 F. Supp. 3d 845 (E.D.N.C. 2024), where the plaintiff, like Propst, retired. The court construed her claim as one for wrongful constructive discharge and dismissed it, holding that "North Carolina does not recognize a claim for wrongful constructive discharge in violation of public policy." *Id.* at 864 (citing *Whitt*, 614 S.E.2d at 532). Federal courts throughout North Carolina agree. *See Bailey v. Islands Mech. Contractor, Inc.*, 827 F. Supp. 3d 639, 663 (E.D.N.C. 2026) ("North Carolina does not recognize wrongful discharge claims for retaliation, constructive discharge, or hostile work environment in violation of the NCEEPA's statement of public policy."); *Gallimore v. Newman Mach. Co.*, 301 F. Supp. 2d 431, 454 (M.D.N.C. 2004) (dismissing with prejudice; North Carolina recognizes no "public policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges"); *Lowe v. Unifi, Inc.*, 292 F. Supp. 2d 773, 790–91 (M.D.N.C. 2003); *Mitchell v. Bandag, Inc.*, 147 F. Supp. 2d 395, 399 (E.D.N.C. 1998) (dismissing where "both plaintiffs quit working for Bandag; neither was fired").

Count I fails for an additional reason. The NCEEPA does not create a private right of action or public policy claim for retaliation. Count I's race subsection is styled as "Race—Retaliation for Opposing Race Discrimination." (ECF 1 at Count I(iii).) The Fourth Circuit has held there is not a private right of action under North Carolina law for retaliation under § 143-422.2. *Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002) (per curiam) ("no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in

violation of public policy"); *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) ("No North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices.").

Accordingly, for the reasons stated above, Count I should be dismissed with prejudice.

### B. COUNT II: FAILS TO STATE A CLAIM UNDER § 1981 BECAUSE PROPST HAS NOT PLAUSIBLY ALLEGED AN ADVERSE ACTION OR BUT-FOR CAUSATION

Count II pleads two theories under 42 U.S.C. § 1981, associational discrimination and retaliation. Propst alleges that Wells Fargo discriminated against him because of his race and his race-based associations, namely his marriage to a Black man and his leadership of a predominantly Black team. (ECF 1 at ¶¶ 109–13.) Propst maintains that Wells Fargo retaliated against him because he opposed race discrimination directed at members of his team. (*Id.* at ¶¶ 103–08.) Both theories rest on the same three asserted harms: a single mid-year 2023 performance rating, unspecified "intolerable working conditions," and Propst's August 2023 retirement, recast as a constructive discharge. (*Id.* at ¶¶ 107, 112.) None of these theories survive, because none of those harms is actionable, and the discrimination theory fails for the further reason that the Complaint does not plausibly allege that race was the but-for cause of any of the alleged harms.

#### 1. Propst's Allegations Fail to State an Associational Discrimination Claim under Section 1981

To state a discrimination claim, Propst must plausibly allege that Wells Fargo discriminated against him because of race "with respect to [his] compensation, terms, conditions, or privilege of employment," *Batchelor*, 747 F. Supp. 3d at 859, which requires "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Courts analyze § 1981 claims under the Title VII framework. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216, 219 (4th Cir. 2016). Ordinarily, a plaintiff

establishes a prima facie case of race discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). These elements, however, must be adapted to the circumstances of the particular claim. *Guessous*, 828 F.3d at 219. Section 1981 protects a plaintiff who alleges discrimination because of an interracial relationship or association, even where the plaintiff himself is not a racial minority. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 258 (4th Cir. 2001). Thus, Propst must plausibly allege that he suffered an adverse employment action because of his association with Black persons—his husband and the members of his predominantly Black team.

Section 1981 also requires but-for causation at the pleading stage. For the discrimination theory, Propst must plead that "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399–400 (4th Cir. 2021). He need not plead a prima facie case, but he must "allege facts to satisfy the elements of a cause of action created by [the] statute." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)).

### A. Propst's Allegations are Insufficient to Allege An Adverse Employment Action Based on Constructive Discharge

In order to advance Propst's 1981 claim, he must assert facts to suggest he suffered an adverse employment action. Propst attempts to do so by claiming that his working conditions became so intolerable that his retirement must be treated as a constructive discharge. (ECF 1 at ¶¶ 107, 112.) Constructive discharge is not a separate claim, but instead is an avenue for a plaintiff to

demonstrate an adverse employment action. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) (when an employee resigns in the face of intolerable conditions, the law "treats that resignation as tantamount to an actual discharge"). To demonstrate constructive discharge, a plaintiff must satisfy two elements. *High v. Wells Fargo Bank*, No. 3:21cv81, 2023 WL 2505540, at *11 (E.D. Va. Mar. 14, 2023) (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019)).

First, he must plausibly allege that his "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green*, 578 U.S. at 555; *see Carr v. United States*, 694 F. Supp. 3d 689, 692 (E.D.N.C. 2022). The inquiry is objective. It asks whether a reasonable person "would have had no choice but to resign." *Perkins*, 936 F.3d at 212. Second, he must plausibly allege that he "actually resign[ed] because of those conditions"—that is, that but for those conditions he would not have left. *High*, 2023 WL 2505540, at *11 (quoting *Perkins*, 936 F.3d at 212). Courts apply these Title VII principles to § 1981 constructive discharge claims. *See id.*; *Barcliff v. N. Carolina League of Municipalities*, No. 5:10-CV-244-D, 2011 WL 3290578, at *5 (E.D.N.C. Aug. 1, 2011).

The standard is demanding by design. It is "higher than that for a hostile work environment claim." *Carr*, 694 F. Supp. 3d at 692 (citing *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (internal quotation marks omitted). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" are not objectively intolerable. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (internal quotation marks omitted); *accord Carr*, 694 F. Supp. 3d at 692–93. "Unless conditions are beyond 'ordinary' discrimination, a

complaining employee is expected to remain on the job while seeking redress." *Evans*, 936 F.3d at 193 (internal quotation marks omitted).

Because § 1981 reaches only race-based discrimination, *see Lemon*, 985 F.3d at 396, only conditions plausibly tied to race can claim toward intolerability under Count II, *see Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 490 (E.D.N.C. 2020) (harassment must be "based on race"). Setting aside the allegations the Complaint attributes to age, disability, and to sexual orientation, five allegations remain. Propst asserts:

- A single undated remark that the race of Propst's husband "wasn't what [Vasquez] expected";
- Sarcastic remarks about improved "diversity numbers";
- Vasquez's refusal to meet Propst's team in person;
- A generalized assertion that Propst and his team were marginalized;
- and the mid-year rating.

(ECF 1 at ¶¶ 22–24, 40–41, 45.)

Those allegations fall well short. Propst's allegations appear to span years and in any event do not culminate in an environment that could be considered so intolerable that an employee had no option but to resign. The Fourth Circuit has held that considerably worse treatment does not compel resignation. "[B]eing yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign." *Perkins*, 936 F.3d at 212 (citing *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Neither is "co-worker ostracism, denial of a management position and mandatory counseling," nor "being ignored by co-workers and top management." *Id.* (internal quotation marks omitted). "[R]ude treatment from coworkers, callous behavior by one's superiors, or a

routine difference of opinion and personality conflict with one's supervisor are not actionable." *Evans*, 936 F.3d at 192 (internal quotation marks omitted).

*Gelin v. N-Able Techs., Inc.*, No. 5:22-CV-345-FL, 2023 WL 3079420 (E.D.N.C. April 25, 2023), is particularly instructive. The plaintiff there alleged that he was demoted during a reorganization while members of his team were promoted, that management ignored his requests, that management praised his former team "as though [he] never existed," that he was omitted from companywide emails, and that his responsibilities were reduced without good cause. *Gelin*, 2023 WL 3079420, at *1–2, 4. The court dismissed the constructive discharge theory on the pleadings, holding that those allegations amounted, at most, to difficult or unpleasant working conditions. *Id.* at *4.

Propst alleges less. No epithets. No threats. No discipline. No demotion. And no reduction in pay, title, or responsibility. *Cf. Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (near-daily ethnic epithets and repeated public humiliation raised a triable question of intolerability). Two remarks, a refusal to meet in person, a conclusory assertion of marginalization, and a single performance review, conduct spanning years, do not describe conditions a reasonable person would have found intolerable. Propst fails to include any allegations to suggest that he was constructively discharged and for this reason, Propst cannot rely upon constructive discharge to assert an adverse action to support his Section 1981 claims.

### B. Propst's Mid-year Rating Altered No Term or Condition of Employment and Cannot Support An Adverse Employment Action

To the extent Propst attempts to rely upon the mid-year review to establish an adverse action under Section 1981, these allegations also fall short of stating an associational discrimination claim. The Fourth Circuit has long held that a poor performance evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally

alter the terms or conditions of the recipient's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (internal quotation marks omitted). Negative performance reviews "are not adverse employment actions unless they have 'collateral consequences that rise to the level of an adverse employment action.'" *Nordan v. Wal-Mart Stores E. LP*, No. 4:24-CV-176-M-KS, 2025 WL 2408545, at *3 (E.D.N.C. July 21, 2025), adopted, 2025 WL 2405512 (E.D.N.C. Aug. 19, 2025).

The consequences alleged must be real, not speculative. In *Bradley v. Gannett Co. Inc.*, No. 1:23-cv-1100, 2025 WL 2533504 (E.D. Va. Sept. 3, 2025), a § 1981 plaintiff alleged that a negative evaluation left him with no chance at a pay increase, bonus, or promotion. 2025 WL 2533504, at *8. The court held those allegations "entirely speculative" because the plaintiff did not allege "that he was eligible for and subsequently did not receive a pay increase, bonus, or promotion." *Id.* And in *Barcliff v. North Carolina League of Municipalities*, the plaintiff alleged that she received "the worst performance evaluation in her prior 14 years of employment, which impacted [her] merit increase, promotion opportunities, and future salary and bonus pay." 2011 WL 3290578, at *3. The court dismissed her § 1981 claims, holding that she had not plausibly alleged an adverse action. *Id.* at *4.

Propst pleads less than the *Barcliff* plaintiff did. He alleges a single mid-year 2023 rating of "Inconsistently Meets Expectations," followed by the assertion that the rating "had a direct and substantial negative impact on [his] professional standing." (ECF 1 at ¶¶ 45, 48.) That is an unsupported conclusion, not a fact. *Iqbal*, 556 U.S. at 678–79. The Complaint does not allege that Propst's compensation was reduced, that he was denied a merit increase or bonus for which he was eligible, that he was demoted or stripped of title or responsibility, that he was placed on a performance improvement plan, or that he was disciplined in any manner. He remained a Senior

Vice President earning base and bonus compensation of approximately $296,000 through his retirement in August 2023. (*Id.* at ¶¶ 10, 11, 14.) And because he retired approximately one month after the review, the Complaint neither alleges nor could allege that Wells Fargo ever used the evaluation "as a basis to detrimentally alter the terms or conditions" of his employment. *James*, 368 F.3d at 377.

While *Muldrow* lowered the degree of harm a discrimination plaintiff must show, it did not the requirement that the harm touch "an identifiable term or condition of employment." 601 U.S. at 354–55. Applying *Muldrow*, the *Batchelor* court held that a superior's expression of concern about the plaintiff's performance was not an adverse action because the plaintiff did not plausibly allege how it harmed any identifiable term or condition of her employment. 747 F. Supp. 3d at 860; *see also Grimes v. Dep't of Def.*, No. 1:24-CV-1164-MSN-IDD, 2025 WL 1334054, at *3 (E.D. Va. May 7, 2025) (holding that negative feedback, ignored complaints, and reprimands are not adverse actions). Propst's mid-year evaluation is no different.

### C. Propst Has Not Plausibly Alleged That Intentional Race Discrimination Caused Any Harm

The discrimination theory fails for a second, independent reason. The Complaint does not plausibly allege that race was the but-for cause of anything Wells Fargo did. Propst alleges that "[b]ut for [his] race and his marriage to, and association with, Black persons, [Wells Fargo] would not have subjected [him] to the pretextual negative rating, the intolerable working conditions, and the constructive discharge alleged herein." (ECF 1 at ¶ 112.) That is a legal conclusion, not a fact the Court must accept. *Iqbal*, 556 U.S. at 678–79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (explaining that a § 1981 complaint requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (internal quotation marks omitted)).

The Fourth Circuit addressed the same pleading failure in in *Lemon*. 985 F.3d at 392. There, the plaintiff, a Black attorney, alleged that her firm denied her short term leave because of her race. *Id.* at 399–400. Her one "factually-specific, non-conclusory allegation of racially-motivated conduct" was that a shareholder complained about her "play[ing] the black card" too often. *Id.* at 400. Because she "failed to allege any facts linking" that remark to the decision denying her leave, "any potential connection" remained "a matter for speculation," and her remaining race-related allegations could not "be woven together" with it to suggest a "general pattern" of discrimination. *Id.* (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)). The court affirmed dismissal because the pleadings were "incapable of stating a plausible claim that Lemon's short term leave request would not have been denied but-for her race." *Id.*

Propst's allegations are of the same kind. He alleges that Vasquez, upon seeing Propst's husband during a video call, remarked that his race "wasn't what [she] expected"; that she made sarcastic remarks about improved "diversity numbers"; and that she declined to meet Propst's team in person. (ECF 1 at ¶ 106.) He alleges no facts connecting any of those remarks to the mid-year performance review or to his retirement. The Complaint is also lacking in any assertion as to when these alleged comments occurred.

And, as shown above, the Complaint attributes this conduct to other causes. The Complaint alleges that Propst's "age was a motivating and substantial factor in the adverse treatment he suffered and in his constructive discharge" (*id.* at ¶ 79); that Vasquez acted from "animus toward Plaintiff on account of his age, his sexual orientation, his marriage to a Black man, and his advocacy on behalf of his predominantly Black team" (*id.* at ¶ 121); and that the rating was the product of a quota rather than of anything particular to Propst (*id.* at ¶¶ 75–76). Allegations that

race "may have played some role or even been a motivating factor" do not state a claim under § 1981. *Bradley*, 2025 WL 2533504, at *5; *see Comcast*, 589 U.S. at 341.

**2. Propst Fails to Allege Facts Sufficient to State a Retaliation Claim**

To state a retaliation claim, Propst must plausibly allege "(1) [that he] engaged in protected activity[;] (2) [that he] suffered an adverse employment action at the hands of [his employer]; and[,] (3) [that the employer] took the adverse action because of the protected activity." *High*, 2023 WL 2505540, at *13 (quoting *Jacques v. Wipro Ltd.*, No. 3:20cv865, 2021 WL 1270467, at *8 (E.D. Va. Apr. 6, 2021)). The adverse action must be one "that a reasonable employee would find materially adverse." *Batchelor*, 747 F. Supp. 3d at 861; *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Courts within the Fourth Circuit take an expansive view of what constitutes protected activity, examining "the course of a plaintiff's conduct through a panoramic lens" and "judging the picture as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). However, "[i]n order to sustain a § 1981 claim for retaliation based upon race, the protected activity must also involve race." *Ali v. BC Architects Eng'rs, PLC*, No. 1:18cv01385, 2021 WL 2816016, at *6 (E.D. Va. May 28, 2021) (citing *Liegeois v. Johns Hopkins Med.*, No. 15-2919, 2016 WL 1625121, at *3 (D. Md. 2016), *aff'd*, 692 F. App'x 714 (4th Cir. 2017)). That is, § 1981 covers claims for retaliation, but only "for complaining about racial discrimination." *Liegeois*, 2016 WL 1625121, at *3. *Salley v. Sch. Bd. of Amelia Cnty., Virginia*, No. 3:20CV939, 2021 WL 5760893, at *21 (E.D. Va. Dec. 3, 2021).

As an initial matter, Propst asserts that he engaged in protected activity when he, at an unknown date, complained to Vasquez, to HR, and to Ryan Baum, a senior leader at Wells Fargo regarding discrimination, interference with his accommodation, and the treatment of his team. (ECF 1 at ¶¶ 33, 49, 51.) Propst alleges that no remedial action followed. (*Id.* at ¶¶ 44, 56.) Propst

offers no further facts related to his complaints, including when he complained. There is no indication to suggest that Propst made any complaints close in time to his retirement. Instead, he seems to assert a variety of complaints that occurred in the last couple of years of his employment.

Assuming Propst can sufficiently identify protected activity, he fails to allege facts to suggest an adverse action that a reasonable employee would find materially adverse. As discussed above, Propst cannot show constructive discharge. He also fails to indicate that his complaints were in anyway tied to his mid-year performance review. *See Burlington N.*, 548 U.S. at 68 (requiring a retaliation plaintiff to show the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," a standard designed "to separate significant from trivial harms" (internal quotation marks omitted)); *Bradley*,2025 WL 2533504, at *9 (holding that negative performance review was not a materially adverse action supporting § 1981 retaliation claim where plaintiff alleged no resulting consequences or injury to his employment); *Barnhill v. Garland*, 636 F. Supp. 3d 592, 608 (E.D. Va. 2022) (holding that downgraded performance rating, later reversed, was not an adverse action supporting retaliation claim).

The cases further require but-for causation for a retaliation claim under Section 1981. *See Guessous*, 828 F.3d at 217–18. Propst has failed to allege facts to suggest that his complaints over a period of years resulted in any adverse action.

At bottom, Propst cannot advance a discrimination or retaliation theory under Section 1981. Propst has not plausibly alleged an actionable adverse action, and he has not plausibly alleged that race was the but-for cause of anything.

Accordingly, Count II should be dismissed.

### C. COUNT III: PROPST FAILS TO STATE A CLAIM FOR NEGLIGENT RETENTION AND SUPERVISION

Propst seems to allege that Vasquez intentionally interfered with Propst's employment relationship with Wells Fargo and as such, Wells Fargo negligently retained Vasquez. To state a claim for negligent retention and supervision under North Carolina law, a plaintiff must allege "that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707 (E.D.N.C. 2009) (quoting *Smith v. Privette*, 128 N.C. App. 490, 494–95, 495 S.E.2d 395, 398 (1998)). The claim exists only where an employee has committed an independent tort, and that underlying tort must be one recognized at common law. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003). The notice element, in turn, demands facts showing that the employer knew or had reason to know of the employee's unfitness before the tortious act occurred. A conclusory assertion of knowledge will not do. *Nance v. Rowan-Salisbury Bd. of Educ.*, 336 F. Supp. 3d 593, 598 (M.D.N.C. 2018).

Count III fails on both elements. Propst labels Vasquez's conduct "tortious interference," but the label alone is insufficient to carry the claim. The only thing that makes Vasquez's conduct wrongful in Propst's telling is alleged discriminatory and retaliatory animus, which cannot support a negligent retention claim, and the Complaint does not plead the elements of tortious interference in any event. And even if a predicate tort existed, the Complaint pleads no facts showing that Wells Fargo knew or should have known of Vasquez's alleged unfitness before she acted.

**1. The Complaint Does Not State a Predicate Common Law Tort**

To the extent Propst attempts to rely on any allegations of discrimination to supply the common law tort necessary for a negligent retention claim, such assertions fail as a matter of law. The Fourth Circuit has held that a negligent retention or supervision claim cannot rest on allegations of discrimination-based harassment or retaliation, "neither harassment or retaliation

being common law torts in North Carolina." *McLean*, 332 F.3d at 719. The same is true of § 1981. *Jackson*, 608 F. Supp. 2d at 708 (holding that alleged violations of Title VII and § 1981 "are not common-law torts" and dismissing negligent supervision and retention claim); *see also Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 494 (E.D.N.C. 2020) (harassment or retaliation, "standing alone," cannot sustain the claim); *Webb v. Starbucks Corp.*, No. 1:07cv271, 2008 WL 4891106, at *12 (W.D.N.C. Nov. 12, 2008) (dismissing negligent retention claim for lack of an underlying common law tort under *McLean*). Nor can the allegations in Count I supply the missing tort. Wrongful discharge in violation of public policy "is a tort committed against plaintiff by her employer, rather than employees," and so it cannot be the employee's tortious act on which a negligent retention claim depends. *Whitfield*, 482 F. Supp. 3d at 494. Simply put, neither the allegations supporting Count I nor Count II can carry Count III.

Propst seems to recognize the problem. Rather than rest Count III on his other claims, he recasts Vasquez's supervision as "tortious interference with [his] employment relationship." (ECF 1 at ¶ 122.) The new label changes nothing. Count III rests on the same conduct as Count's I and II—the mid-year performance rating, Vasquez's treatment of Propst's remote work accommodation, the marginalization of his team, and the pressure to retire. (*Id.* at ¶ 120.) Propst concedes that Vasquez did all of this "within the scope of her supervisory authority and employment with Defendant." (*Id.* at ¶ 121.) The only allegation offered to convert that conduct into a common law tort is the reason Propst gives to it—Vasquez's "personal animus toward [Propst] on account of his age, his sexual orientation, his marriage to a Black man, and his advocacy on behalf of his predominantly Black team." (*Id.*) That is the discrimination theory of Count I and the retaliation and associational discrimination theories of Count II, restated. (*Compare id.* at ¶ 121, *with id.* at ¶¶ 70–95, 104–13.)

A claim built on discrimination and retaliation does not become a common law tort because Propst calls it one. If it did, every allegedly discriminatory rating, reassignment, or remark by a supervisor could be pleaded as "interference" with the employee's employment, and the rule the Fourth Circuit announced in *McLean* would be obsolete. Courts therefore look past the label to whether the employee actually committed a tort recognized at common law. *See Whitfield*, 482 F. Supp. 3d at 494–95 (rejecting negligent supervision claim where asserted predicates were not torts under North Carolina law, were torts of the employer rather than the employee, or were "not pleaded or otherwise fail[ed] to state a claim"); *cf. Keener v. Universal Cos.*, 128 F. Supp. 3d 902, 918 (M.D.N.C. 2015) (holding that plaintiff could not rely on harassment and retaliation allegations and permitting claim to proceed only on alleged common law assault).

Even considering the tortious inference claim, it also fails on its own terms. To state a tortious interference claim, a plaintiff must allege facts showing "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp. 2d 639, 652 (W.D.N.C. 2005) (internal quotation marks omitted). Each element must be supported by facts; a recitation of the element is not enough. *CSC Emp. Benefits Fiduciary Comm. v. Avera*, No. 5:15-CV-4-BO, 2015 WL 4041333, at *1 (E.D.N.C. July 1, 2015); *Fen-Phen Series 2005-01 v. James S. Farrin, P.C.*, No. 1:09CV479, 2010 WL 1740521, at *4 (M.D.N.C. Apr. 28, 2010). The Complaint fails on all elements.

Propst seems to argue that a contract exists between him and Wells Fargo, and that Defendant's management including Vasquez intentionally induced Defendant to terminate

Plaintiff's employment. Specifically, Propst claims that "Vasquez intentionally induced Wells Fargo not to continue its employment relationship with Plaintiff." (ECF 1 at ¶ 120.) Propst asserts that by "among other things assigning Plaintiff a performance rating she knew to be unwarranted and unsupported by his actual performance, attacking and undermining his formally approved medical accommodation, marginalizing Plaintiff and his team within the organization, and pressing Plaintiff to retire—thereby rendering the conditions of Plaintiff's employment so intolerable that a reasonable person in his position would have felt compelled to resign, and causing his constructive discharge." (*Id.*)

First, Propst fails to identify a valid contract between Plaintiff and a third person—the only alleged contract is between Propst and Wells Fargo. Specifically, a "Defendant cannot interfere with its own contract with Plaintiff." *See Nicholson v. Mecklenburg Cnty.*, No. 318-CV-00167-FDW-DCK, 2018 WL 3076787, at *3 (W.D.N.C. June 21, 2018). Propst cannot demonstrate a contract between Plaintiff and a third person.

Turning to the remaining elements, there are no allegations in the Complaint that Wells Fargo induced a third person not to perform, that Wells Fargo acted without justification (or that Wells Fargo acted at all) or that Wells Fargo caused damage to Propst. Propst's claims fail for each of these reasons. While a plaintiff can prevail on a tortious interference claim against a "non-outsider" to a contract—i.e., a person "who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter"— this claim prevails only if the non-outsider maliciously procured the contract's termination. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282, 292 (1976). "It is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice." *Hubbard v. N.C. State Univ.*, 248 N.C.App. 496, 506, 789 S.E.2d 915, 922 (2016) (internal quotation marks

omitted). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (internal quotation marks omitted).

Generally speaking, "'non-outsiders' [to an employment contract] often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty,* 106 N.C.App. 496, 513, 418 S.E.2d 276, 286, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992). To overcome this privilege, Propst would need to show that Vasquez acted with legal malice or acted in their own self-interest. *Robinson v. Proctor & Gamble Mfg. Co.*, No. 1:18-CV-133, 2019 WL 1005504, at *8 (M.D.N.C. Mar. 1, 2019). Moreover, even if this burden is satisfied, the "complaint must admit of no motive for interference other than malice." *Id.*

There are no allegations to suggest Vasquez acted with legal malice. Further, Propst's Complaint also fails to include any facts to suggest that Vasquez caused Wells Fargo to terminate the alleged employment relationship. *See Lamm v. Branch Banking & Tr. Co.*, 750 F. App'x 189, 191 (4th Cir. 2018). As discussed, Propst's complaint attributes his 2023 mid-year review to, among other things, a forced "bell curve" within the company. There are also no allegations to suggest that Vasquez's conduct resulted in Propst's termination. Instead, his own allegations confirm he retired.

Propst alleges that Vasquez "intentionally induced Wells Fargo not to continue its employment relationship with Plaintiff, and to alter the terms of that relationship to Plaintiff's detriment." (ECF 1 at ¶ 120.) That restates the element. The facts pleaded point the other way. Wells Fargo did not end the relationship. It continued to employ Propst until he retired. (*Id.* at ¶ 57.) It did not withdraw his accommodation; it formally re-approved it, and his remote work

arrangement "remained in place through Plaintiff's departure." (*Id.* at ¶¶ 27–28.) The Complaint does not allege that Wells Fargo reduced his pay, his bonus, or his benefits. There are no factual allegations that Vasquez induced Wells Fargo to end its relationship with Propst. Propst retired, and he alleges he did so because Vasquez's own conduct as his supervisor made his working conditions intolerable. (*Id.* at ¶¶ 55–57, 120.) That is a constructive discharge theory, which Propst asserts against Wells Fargo in Count I (*id.* ¶¶ 68–69), and wrongful discharge is "a tort committed against plaintiff by her employer, rather than employees." *Whitfield*, 482 F. Supp. 3d at 494. Where a plaintiff "has alleged no facts" showing inducement and "merely states a legal conclusion," the claim fails. *CSC*, 2015 WL 4041333, at *9.

The justification element fails too. To plead that the defendant acted without justification, the plaintiff must allege facts showing "no motive for interference other than malice." *Braswell*, 352 F. Supp. 2d at 652 (internal quotation marks omitted). A defendant who acts "for a reason reasonably related to a legitimate business interest" is justified. *Fen-Phen*, 2010 WL 1740521, at *4 (internal quotation marks omitted). A supervisor who rates a subordinate's performance and manages his team is attending to her employer's business, and the Complaint concedes that Vasquez did all of this "within the scope of her supervisory authority." (ECF 1 at ¶ 121.) The Complaint goes further and supplies a business reason itself. It alleges that Vasquez attributed the rating to a forced "bell curve," an evaluation method that assigns a fixed distribution of ratings across a group. (*Id.* at 8 n.1; *id.* at ¶¶ 45–46, 75.) Propst calls that reason pretext for discrimination (*id.* at ¶¶ 47, 76, 113), but that returns him to the theory *McLean* forecloses. Apart from that theory, all he offers is the assertion that Vasquez acted "without justification, from personal motives" (*id.* at 121)—the kind of "bare allegations of malice, devoid of any factual enhancement," that do not state a claim. *Fen-Phen*, 2010 WL 1740521, at *4.

Count III therefore states no predicate common law tort, and it fails for that reason alone.

**2. The Complaint Does Not Plausibly Allege That Wells Fargo Knew or Should Have Known of Vazquez's Alleged Unfitness**

Count III fails for a second reason. The employer must have known or had reason to know of the employee's incompetency "prior to the act," and that knowledge must be pleaded with facts, not conclusions. *Nance*, 336 F. Supp. 3d at 597–98. Paragraph 124 does not meet that standard. Propst's complaints and his objections to his team's treatment put Wells Fargo on notice, at most, of alleged discrimination and of disputes over his accommodation. (ECF 1 at ¶¶ 49, 51–52, 124.) Those are statutory theories that cannot support a negligent retention claim, *see McLean*, 332 F.3d at 719, and notice of alleged discrimination is not notice that Vasquez was unfit in any way that bears on a common law tort. *See Nance*, 336 F. Supp. 3d at 597 (requiring that the injury result from the incompetency of which the employer had notice). The remaining allegation, a "subsequent investigation—prior to August of 2023—of conduct within Vasquez's organization," does not say whose conduct was investigated, what that conduct was, when the investigation began, or what it found. (ECF 1 at ¶ 124.) An allegation that thin cannot supply the knowledge element.

Propst has pleaded neither a predicate common law tort nor prior notice of Vasquez's alleged unfitness and Count III should be dismissed.

## CONCLUSION

For the reasons set forth above, Wells Fargo respectfully asks this Court to dismiss the Plaintiff's Complaint in its entirety.

**Dated: October 9, 2026**

Respectfully submitted,

*/s/ Mary Grace Miller*

Mary Grace Miller (NC Bar No. 57395)

Lawrence D. Hilton (NC State Bar No. 64966)
Fisher & Phillips, LLP
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 778-4191
E-mail: mgmiller@fisherphillips.com
lhilton@fisherphillips.com

**ATTORNEYS FOR DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ROBERT PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:26-cv-00655 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO & COMPANY, | ) | DEFENDANTS MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on October 9, 2026, this **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** was served via the court's electronic filing system.

This the 9th day of October 2026.

Respectfully submitted,

/s/ *Mary Grace Miller*
Mary Grace Miller
**FISHER & PHILLIPS LLP**