UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ROBERT PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:26-cv-00655 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, Wells Fargo Bank, N.A.[1] ("Wells Fargo" or "Defendant") by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss Plaintiff Robert Propst's First Amended Complaint.

## I. INTRODUCTION

After more than 38 years with Wells Fargo and its predecessors, Robert Propst retired in August 2023, approximately one month after receiving a mid-year performance rating he believes he did not deserve. Now, nearly three years later, he brings this action alleging various federal and state law claims. His Amended Complaint attempts to transform his choice to retire into four causes of action against Wells Fargo. But the factual allegations in the Complaint are insufficient to state any of the claims he attempts to bring and Wells Fargo requests dismissal of this action.

Count I asserts retaliation and associational race discrimination under 42 U.S.C. § 1981. Both theories rest principally on Propst's allegation that a single mid-year performance rating and Propst's retirement, recast as a constructive discharge, constitute adverse employment actions. The 2023 mid-year performance rating did not reduce his compensation, title, responsibilities, or

[1] Wells Fargo & Company is not the proper defendant in this action. Wells Fargo Bank, N.A. employed Propst.

benefits, which precludes Propst's ability to demonstrate that he suffered an adverse action based on the mid-year review. As for constructive discharge, the conditions Propst describes were not objectively intolerable. His retirement therefore cannot serve as an adverse action under either § 1981 theory. Just as important, Propst's own assertions undermine but-for causation, which is fatal to any § 1981 claim. The Amended Complaint asserts that Wells Fargo's conduct occurred because of his age, disability accommodation, sexual orientation, a forced ratings curve, among other factors—not race alone.

In Count II, Propst now seeks to establish a separate claim of constructive discharge in violation of 42 U.S.C. § 1981. Wells Fargo submits that constructive discharge is not a separate cause of action and for this reason alone the claim must be dismissed. In any event, even if the Court considered "constructive discharge" as a standalone claim, Propst has failed to allege sufficient facts to state such a claim.

In Count III, Propst attempts to state a negligent retention and supervision claim, but he fails to allege facts to establish the elements of that claim. Importantly, to state a negligent retention claim, Propst must identify and allege facts to support an underlying common law tort. Discrimination and retaliation do not qualify, and calling his supervisor's conduct "tortious interference" does not cure the problem. Propst does not plausibly allege that his supervisor induced Wells Fargo to end its relationship with him or that Wells Fargo knew of any alleged unfitness before the conduct at issue. The three-year statute of limitations further bars this claim.

Finally, in Count IV, Propst adds a claim for intentional infliction of emotional distress against Wells Fargo. To support his IIED claim, Propst maintains that Vasquez, who is not a defendant is this action, engaged in "a continuous, deliberate, and escalating course of discriminatory harassment, intimidation, humiliation, and retaliatory conduct directed toward

Plaintiff." (ECF No. 11 at ¶ 154.) The conduct Propst complains of does not meet the high bar necessary to state an IIED claim as a matter of law. Further, the statute of limitations bars this claim.

Wells Fargo submits that Propst's Amended Complaint remains deficient and all Propst's claims must be dismissed.

## II. FACTUAL ALLEGATIONS[2]

Propst joined Wells Fargo's predecessor in April 1985 and, through a series of mergers, remained employed by Wells Fargo until August 2023. (ECF 11 at ¶¶ 9–10.) He rose to the position of Senior Vice President after roughly 38 years of service and alleges a consistently strong performance record throughout his tenure with the company. (*Id.* at ¶¶ 11–13.) Beginning in 2017, Propst helped lead Wells Fargo's Rebuilding Trust Office, a compliance function organized in response to a Consumer Financial Protection Bureau consent order, (*id.* at ¶¶ 15–17), and he alleges that his team's work contributed to the lifting of that consent order in September 2021. (*Id.* at ¶ 19.) At the time of his separation, Propst alleges a base salary of $201,000 and annual bonus compensation of approximately $95,000. (*Id.* at ¶ 14.)

In the fall of 2022, following a reorganization, Propst and his team were assigned to report to Sandra Vasquez, who was based in Chicago. (*Id.* at ¶¶ 21–22.) Propst alleges that Vasquez questioned the value of his team, declined to meet with his team in person, and marginalized Propst and his team within the company. (*Id.* at ¶¶ 22–24.)

Propst also maintains that he has experienced diminished vision since 2016, that Wells Fargo recognized the condition, and that Wells Fargo approved accommodations for him,

[2] Only for the purposes of this Motion to Dismiss, Wells Fargo accepts as true Propst's allegations in the Complaint as required under the Federal Rules.

including a remote work arrangement that remained in place through his separation. (*Id.* at ¶¶ 25–27.) He alleges that after his reassignment, Vasquez pressured him to work from the office, notwithstanding that approved accommodation and subjected his attendance to intense scrutiny. (*Id.* at ¶¶ 29–32.)

Propst further alleges that Vasquez made comments concerning his age, length of employment, and retirement, (*id.* at ¶¶ 34–37), and that she made remarks he characterizes as reflecting animus based on his sexual orientation and on his marriage to a Black man. (*Id.* at ¶¶ 54–55.) Additionally, he alleges that she treated his predominately Black team less favorably than comparable employees. (*Id.* at ¶¶ 44, 57.)

In 2023, Propst claims that he received a mid-year performance rating of "Inconsistently Meets Expectations," which he characterizes as the first negative rating of his career and attributes to a forced "bell curve" rather than his performance. (*Id.* at ¶¶ 57, 61.) He alleges that, on unknown dates, Propst complained to Vasquez, to HR, and to Ryan Baum, a senior leader at Wells Fargo, regarding discrimination. (*Id.* at ¶¶ 33, 41, 59.) Propst alleges that no remedial action followed. (*Id.* at ¶ 59.)

Critically, Propst does not claim that Wells Fargo terminated his employment. Rather, he confirms that he retired from his employment. He maintains instead that the cumulative conditions rendered his continued employment intolerable, (*id.* at ¶¶ 70, 72), and that, "on or about August 11, 2023, at age 63" he was "forced into early retirement and thereby constructively discharged." (*Id.* at ¶ 72.) He alleges that he intended to work until age 67, (*id.*), and that Wells Fargo thereafter placed a substantially younger employee into his former role or a similar position. (*Id.* at ¶ 88.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*

Conversely, "[a] complaint may fail to state a claim upon which relief may be granted in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim, … or second, by failing to allege facts to support a legal cause of action." *See Flores v. Gmri, Inc.*, 2016 WL 7264845, at *2 (M.D.N.C. 2016); *see Halloway v. Pagan River Dockside Seafood., Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

## IV. ARGUMENT

### A. COUNT I: FAILS TO STATE A CLAIM UNDER § 1981 BECAUSE PROPST HAS NOT PLAUSIBLY ALLEGED AN ADVERSE ACTION OR BUT-FOR CAUSATION

Count I pleads two theories under 42 U.S.C. § 1981, associational discrimination and retaliation. Propst alleges that Wells Fargo discriminated against him because of his race and his race-based associations, namely his marriage to a Black man and his leadership of a predominantly Black team. (ECF 11 at ¶¶ 105–106.) Propst maintains that Wells Fargo retaliated against him because he opposed race discrimination directed at members of his team. (*Id.* at ¶¶ 109–111.) Both

theories rest on the same allegedly "materially adverse actions," including: a single mid-year 2023 performance rating, unspecified "intolerable working conditions," and Propst's August 2023 retirement, recast as a constructive discharge. (*Id.* at ¶¶ 102.) None of these theories survive, because none of those harms is actionable, and the discrimination theory fails for the further reason that the Amended Complaint does not plausibly allege that race was the but-for cause of any of the alleged harms.

**1. Propst's Allegations Fail to State an Associational Discrimination Claim under Section 1981**

To state a discrimination claim, Propst must plausibly allege that Wells Fargo discriminated against him because of race "with respect to [his] compensation, terms, conditions, or privilege of employment," *Batchelor*, 747 F. Supp. 3d at 859, which requires "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Courts analyze § 1981 claims under the Title VII framework. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216, 219 (4th Cir. 2016). Ordinarily, a plaintiff establishes a prima facie case of race discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). These elements, however, must be adapted to the circumstances of the particular claim. *Guessous*, 828 F.3d at 219. Section 1981 protects a plaintiff who alleges discrimination because of an interracial relationship or association, even where the plaintiff himself is not a racial minority. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 258 (4th Cir. 2001). Thus, Propst must plausibly allege that he suffered an adverse employment action because

of his association with Black persons—his husband and the members of his predominantly Black team.

Section 1981 also requires but-for causation at the pleading stage. For the discrimination theory, Propst must plead that "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399–400 (4th Cir. 2021). He need not plead a prima facie case, but he must "allege facts to satisfy the elements of a cause of action created by [the] statute." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)).

### A. Propst's Allegations are Insufficient to Allege An Adverse Employment Action Based on Constructive Discharge

In order to advance Propst's 1981 claim, he must assert facts to suggest he suffered an adverse employment action. Propst attempts to do so by claiming that his working conditions became so intolerable that his retirement must be treated as a constructive discharge. (ECF 11 at ¶¶ 102, 107.) Constructive discharge is not a separate claim, but instead is an avenue for a plaintiff to demonstrate an adverse employment action. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) (when an employee resigns in the face of intolerable conditions, the law "treats that resignation as tantamount to an actual discharge"). To demonstrate constructive discharge, a plaintiff must satisfy two elements. *High v. Wells Fargo Bank*, No. 3:21cv81, 2023 WL 2505540, at *11 (E.D. Va. Mar. 14, 2023) (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019)).

First, he must plausibly allege that his "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green*, 578 U.S. at 555; *see Carr v. United States*, 694 F. Supp. 3d 689, 692 (E.D.N.C. 2022). The inquiry is objective. It asks whether a reasonable person "would have had no choice but to resign." *Perkins*,

936 F.3d at 212. Second, he must plausibly allege that he "actually resign[ed] because of those conditions"—that is, that but for those conditions he would not have left. *High*, 2023 WL 2505540, at *11 (quoting *Perkins*, 936 F.3d at 212). Courts apply these Title VII principles to § 1981 constructive discharge claims. *See id.*; *Barcliff v. N. Carolina League of Municipalities*, No. 5:10-CV-244-D, 2011 WL 3290578, at *5 (E.D.N.C. Aug. 1, 2011).

The standard is demanding by design. It is "higher than that for a hostile work environment claim." *Carr*, 694 F. Supp. 3d at 692 (citing *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (internal quotation marks omitted). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" are not objectively intolerable. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (internal quotation marks omitted); *accord Carr*, 694 F. Supp. 3d at 692–93. "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Evans*, 936 F.3d at 193 (internal quotation marks omitted).

Because § 1981 reaches only race-based discrimination, *see Lemon*, 985 F.3d at 396, only conditions plausibly tied to race can claim toward intolerability under Count II, *see Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 490 (E.D.N.C. 2020) (harassment must be "based on race"). Setting aside the allegations the Amended Complaint attributes to age, disability, and to sexual orientation, five allegations remain. Propst asserts:

- A single undated remark that the race of Propst's husband "wasn't what [Vasquez] expected";

- Sarcastic remarks about improved "diversity numbers";
- Vasquez's refusal to meet Propst's team in person;
- A generalized assertion that Propst and his team were marginalized;
- and the mid-year rating.

(ECF 11 at ¶¶ 22, 51, 55–56, 40–41, 61.)

Those allegations fall well short. Propst's allegations appear to span years and, in any event, do not culminate in an environment that could be considered so intolerable that an employee had no option but to resign. The Fourth Circuit has held that considerably worse treatment does not compel resignation. "[B]eing yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign." *Perkins*, 936 F.3d at 212 (citing *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Neither is "co-worker ostracism, denial of a management position and mandatory counseling," nor "being ignored by co-workers and top management." *Id.* (internal quotation marks omitted). "[R]ude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable." *Evans*, 936 F.3d at 192 (internal quotation marks omitted).

*Gelin v. N-Able Techs., Inc.*, No. 5:22-CV-345-FL, 2023 WL 3079420 (E.D.N.C. April 25, 2023), is particularly instructive. The plaintiff there alleged that he was demoted during a reorganization while members of his team were promoted, that management ignored his requests, that management praised his former team "as though [he] never existed," that he was omitted from companywide emails, and that his responsibilities were reduced without good cause. *Gelin*, 2023 WL 3079420, at *1–2, 4. The court dismissed the constructive discharge theory on the pleadings,

holding that those allegations amounted, at most, to difficult or unpleasant working conditions. *Id.* at *4.

Propst alleges less. No epithets. No threats. No discipline. No demotion. And no reduction in pay, title, or responsibility. *Cf. Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (near-daily ethnic epithets and repeated public humiliation raised a triable question of intolerability). Two remarks, a refusal to meet in person, a conclusory assertion of marginalization, and a single performance review, conduct spanning years, do not describe conditions a reasonable person would have found intolerable. Propst fails to include any allegations to suggest that he was constructively discharged and for this reason Propst cannot rely upon constructive discharge to assert an adverse action to support his Section 1981 claims.

### B. Propst's Mid-Year Rating Altered No Term Or Condition of Employment And Cannot Support An Adverse Employment Action

To the extent Propst attempts to rely upon the mid-year review to establish an adverse action under Section 1981, these allegations also fall short of stating an associational discrimination claim. The Fourth Circuit has long held that a poor performance evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (internal quotation marks omitted). Negative performance reviews "are not adverse employment actions unless they have 'collateral consequences that rise to the level of an adverse employment action.'" *Nordan v. Wal-Mart Stores E. LP*, No. 4:24-CV-176-M-KS, 2025 WL 2408545, at *3 (E.D.N.C. July 21, 2025), adopted, 2025 WL 2405512 (E.D.N.C. Aug. 19, 2025).

The consequences alleged must be real, not speculative. In *Bradley v. Gannett Co. Inc.*, No. 1:23-cv-1100, 2025 WL 2533504 (E.D. Va. Sept. 3, 2025), a § 1981 plaintiff alleged that a

negative evaluation left him with no chance at a pay increase, bonus, or promotion. 2025 WL 2533504, at *8. The court held those allegations "entirely speculative" because the plaintiff did not allege "that he was eligible for and subsequently did not receive a pay increase, bonus, or promotion." *Id.* And in *Barcliff v. North Carolina League of Municipalities*, the plaintiff alleged that she received "the worst performance evaluation in her prior 14 years of employment, which impacted [her] merit increase, promotion opportunities, and future salary and bonus pay." 2011 WL 3290578, at *3. The court dismissed her § 1981 claims, holding that she had not plausibly alleged an adverse action. *Id.* at *4.

Propst pleads less than the *Barcliff* plaintiff did. He alleges a single mid-year 2023 rating of "Inconsistently Meets Expectations," followed by the assertion that the rating "had a direct and substantial negative impact on [his] professional standing." (ECF 11 at ¶ 64.) That is an unsupported conclusion, not a fact. *Iqbal*, 556 U.S. at 678–79. The Complaint does not allege that Propst's compensation was reduced, that he was denied a merit increase or bonus for which he was eligible, that he was demoted or stripped of title or responsibility, that he was placed on a performance improvement plan, or that he was disciplined in any manner. He remained a Senior Vice President earning base and bonus compensation of approximately $296,000 through his retirement in August 2023. (*Id.* at ¶¶ 10, 11, 14.) And because he retired approximately one month after the review, the Complaint neither alleges nor could allege that Wells Fargo ever used the evaluation "as a basis to detrimentally alter the terms or conditions" of his employment. *James*, 368 F.3d at 377.

While *Muldrow* lowered the degree of harm a discrimination plaintiff must show, it did not the requirement that the harm touch "an identifiable term or condition of employment." 601 U.S. at 354–55. Applying *Muldrow*, the *Batchelor* court held that a superior's expression of concern

about the plaintiff's performance was not an adverse action because the plaintiff did not plausibly allege how it harmed any identifiable term or condition of her employment. 747 F. Supp. 3d at 860; *see also Grimes v. Dep't of Def.*, No. 1:24-CV-1164-MSN-IDD, 2025 WL 1334054, at *3 (E.D. Va. May 7, 2025) (holding that negative feedback, ignored complaints, and reprimands are not adverse actions). Propst's mid-year evaluation is no different.

### C. Propst Has Not Plausibly Alleged That Intentional Race Discrimination Caused Any Harm

The discrimination theory fails for a second, independent reason. The Complaint does not plausibly allege that race was the but-for cause of anything Wells Fargo did. Propst alleges that "[b]ut for [his] race and his marriage to, and association with, Black persons, [Wells Fargo] would not have subjected [him] to the pretextual negative rating, the intolerable working conditions, and the constructive discharge alleged herein." (ECF 11 at ¶ 107.) That is a legal conclusion, not a fact the Court must accept. *Iqbal*, 556 U.S. at 678–79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (explaining that a § 1981 complaint requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (internal quotation marks omitted)).

The Fourth Circuit addressed the same pleading failure in in *Lemon*. 985 F.3d at 392. There, the plaintiff, a Black attorney, alleged that her firm denied her short-term leave because of her race. *Id.* at 399–400. Her one "factually-specific, non-conclusory allegation of racially-motivated conduct" was that a shareholder complained about her "play[ing] the black card" too often. *Id.* at 400. Because she "failed to allege any facts linking" that remark to the decision denying her leave, "any potential connection" remained "a matter for speculation," and her remaining race-related allegations could not "be woven together" with it to suggest a "general pattern" of discrimination. *Id.* (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)). The court affirmed

dismissal because the pleadings were "incapable of stating a plausible claim that Lemon's short term leave request would not have been denied but-for her race." *Id.*

Propst's allegations are of the same kind. He alleges that Vasquez, upon seeing Propst's husband during a video call, remarked that his race "wasn't what [she] expected"; that she made sarcastic remarks about improved "diversity numbers"; and that she declined to meet Propst's team in person. (ECF 11 at ¶¶ 22, 55, 56.) He alleges no facts connecting any of those remarks to the mid-year performance review or to his retirement. The Complaint is also lacking in any assertion as to when these alleged comments occurred.

And, as shown above, the Complaint attributes this conduct to other causes. The Complaint alleges that Vasquez acted from "animus toward Plaintiff on account of his age, his sexual orientation, his marriage to a Black man, and his advocacy on behalf of his predominantly Black team" (*id.* at ¶ 147); and that the rating was the product of a quota rather than of anything particular to Propst (*id.* at ¶¶ 108). Allegations that race "may have played some role or even been a motivating factor" do not state a claim under § 1981. *Bradley*, 2025 WL 2533504, at *5; *see Comcast*, 589 U.S. at 341.

**2. Propst Fails to Allege Facts Sufficient to State a Retaliation Claim**

To state a retaliation claim, Propst must plausibly allege "(1) [that he] engaged in protected activity[;] (2) [that he] suffered an adverse employment action at the hands of [his employer]; and[,] (3) [that the employer] took the adverse action because of the protected activity." *High*, 2023 WL 2505540, at *13 (quoting *Jacques v. Wipro Ltd.*, No. 3:20cv865, 2021 WL 1270467, at *8 (E.D. Va. Apr. 6, 2021)). The adverse action must be one "that a reasonable employee would find materially adverse." *Batchelor*, 747 F. Supp. 3d at 861; *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Courts within the Fourth Circuit take an expansive view of what

constitutes protected activity, examining "the course of a plaintiff's conduct through a panoramic lens" and "judging the picture as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). However, "[i]n order to sustain a § 1981 claim for retaliation based upon race, the protected activity must also involve race." *Ali v. BC Architects Eng'rs, PLC*, No. 1:18cv01385, 2021 WL 2816016, at *6 (E.D. Va. May 28, 2021) (citing *Liegeois v. Johns Hopkins Med.*, No. 15-2919, 2016 WL 1625121, at *3 (D. Md. 2016), *aff'd*, 692 F. App'x 714 (4th Cir. 2017)). That is, § 1981 covers claims for retaliation, but only "for complaining about racial discrimination." *Liegeois*, 2016 WL 1625121, at *3. *Salley v. Sch. Bd. of Amelia Cnty.,_Virginia*, No. 3:20CV939, 2021 WL 5760893, at *21 (E.D. Va. Dec. 3, 2021).

As an initial matter, Propst asserts that he engaged in protected activity when he, at an unknown date, complained to Vasquez, to HR, and to Ryan Baum, a senior leader at Wells Fargo, regarding discrimination, interference with his accommodation, and the treatment of his team. (ECF 11 at ¶ 41.) Propst alleges that no remedial action followed. (*Id.* at ¶ 59.) Propst offers no further facts related to his complaints, including when he complained. There is no indication to suggest that Propst made any complaints close in time to his retirement. Instead, he seems to assert a variety of complaints that occurred in the last couple of years of his employment.

Assuming Propst can sufficiently identify protected activity, he fails to allege facts to suggest an adverse action that a reasonable employee would find materially adverse. As discussed above, Propst cannot show constructive discharge. He also fails to indicate that his complaints were in anyway tied to his mid-year performance review. *See Burlington N.*, 548 U.S. at 68 (requiring a retaliation plaintiff to show the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," a standard designed "to separate significant from trivial harms" (internal quotation marks omitted)); *Bradley*,2025 WL

2533504, at *9 (holding that negative performance review was not a materially adverse action supporting § 1981 retaliation claim where plaintiff alleged no resulting consequences or injury to his employment); *Barnhill v. Garland*, 636 F. Supp. 3d 592, 608 (E.D. Va. 2022) (holding that downgraded performance rating, later reversed, was not an adverse action supporting retaliation claim).

The cases further require but-for causation for a retaliation claim under Section 1981. *See Guessous*, 828 F.3d at 217–18. Propst has failed to allege facts to suggest that his complaints over a period of years resulted in any adverse action. *See Green v. Pegasus Steel,* 2023 WL 12086974, at *3 (D.S.C. Dec. 19, 2023) (collecting cases and holding that vague allegations without reference to timeframe are insufficient to establish the causation necessary for a retaliation claim). At bottom, Propst cannot advance a discrimination or retaliation theory under Section 1981. Propst has not plausibly alleged an actionable adverse action, and he has not plausibly alleged that race was the but-for cause of anything.

Accordingly, Count I should be dismissed.

### B. COUNT II: CONSTRUCTIVE DISCHARGE IS NOT A SEPARATE CAUSE OF ACTION AND PROPST'S ALLEGATIONS FALL SHORT OF DEMONSTRATING INTOLERABLE CONDITIONS

As an initial matter, Count II must be dismissed because constructive discharge is not a standalone claim. *See Schrof v. Clean Earth, Inc.*, No. BPG-22-1533, 2023 WL 3763984, at *7 (D. Md. June 1, 2023) ("[Constructive discharge] is not an independent cause of action which entitles plaintiff to relief."); *Harris v. Charles E. Smith Life Cmtys.*, No. MJM-21-1242, 2022 WL 4777592 (D. Md. Oct. 3, 2022) ("It is well established that constructive discharge is a form of adverse employment action."); *Williams v. Newport News Sch. Bd.*, No. 4:20-CV-00041, 2021 WL 3674983, at *18 (E.D. Va. Aug. 19, 2021) ("[T]here is no stand-alone cause of action for

constructive discharge."); *Alford v. Wang, Inc.*, 11 F.Supp.3d 584, 594 n.1 (D.S.C. 2014) (noting that "constructive discharge is an element of a structurally larger claim, to wit Title VII ... as opposed to some legal end unto itself").

As clarified by the Colorado district court, "[t]he identification of a 'claim' for constructive discharge is . . . flawed." *Baker v. Baxa Corp.,* Civil Action No. 09–cv–02034–MSK–KLM, 2011 WL 650002, at *1 (D.Colo. Feb. 11, 2011). "The doctrine of constructive discharge arises when an employer allows unlawful discrimination or harassment to rise to such a level that a reasonable employee would have no choice but to elect to resign, rather than continue to endure it." *Id.* (citing *Narotzky v. Natrona Cnty. Mem'l Hosp.,* 610 F.3d 558, 565 (10th Cir.2010)). "If the requisite elements of constructive discharge are demonstrated, the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer." *Id.* "This fiction can satisfy the element of an adverse employment action in a substantive claim, but it does not constitute a claim by itself." *Id.* "Thus, like doctrine of respondeat superior, constructive discharge is not a standalone 'claim.'" *Id.* At least two judges in this District, including this Court, have embraced the *Baker* court's view. *See Rosa v. Bd. of Educ. of Charles Cnty., Md.,* Civil Action No. 8:11–cv–02873–AW, 2012 WL 3715331, at *10 (D.Md. Aug. 27, 2012) ("Constructive discharge is not a claim per se."); *Reed v. Action Prods., Inc.,* Civil No. 12–409–JKB, 2012 WL 2711051, at *2 (D.Md. July 6, 2012) (citation omitted) ("Constructive discharge ... is not an independent basis for relief ...."). For this reason alone, Propst's "constructive discharge" claim fails as a matter of law.

Even if permitted to proceed, Propst's constructive discharge claim would fail because the allegations are insufficient to state such a claim. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit

his job." *Blakes,* 909 F.Supp.2d at 438 (citation and internal quotation marks omitted). "A plaintiff must prove (1) deliberateness of the employer's action and (2) intolerability of the working conditions." *Id.* (citation and internal quotation marks omitted). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Id.* (citation and internal quotation marks omitted).

Here, Propst has insufficiently stated that his working conditions were so intolerable a reasonable person would have felt compelled to quit. Propst's allegations that at some point in 2022, Vasquez began subjecting his "African American subordinates to heightened scrutiny" and the subordinates received "less favorable treatment than similarly situated Caucasian subordinates" is not a factual allegation to suggest that Propst – in August 2023 – felt compelled to resign because his own working conditions were so intolerable. (ECF No. 11 at ¶ 116.) Similarly, Propst's allegations that he raised complaints to various individuals including HR about his colleagues' treatment is also not sufficient to demonstrate that his working conditions were intolerable such that he can state a constructive discharge claim. Importantly, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not [so] intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006).

Opposing discrimination and a feeling of mistreatment afterwards is not the type of conduct courts find sufficient to state a constructive discharge claim. "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign" instead, it is whether a reasonable person "would have had no choice by tot resign." *Decoster v. Becerra*, 119 F.4th 332, 340 (4th Cir. 2024).

Even if the Court found Propst's allegations supported an inference of intolerability, they fail to indicate that Wells Fargo deliberately created the intolerable conditions. Propst's allegations include nothing more than conclusory allegations regarding the motive behind any of the conduct alleged. The Amended Complaint includes numerous conclusory allegations about various complaints and conduct, but lacks the specifics needed to state a claim that Wells Fargo deliberately created intolerable conditions. Accordingly, Wells Fargo asks the Court to dismiss Count II.

### C. COUNT III: PROPST FAILS TO STATE A CLAIM FOR NEGLIGENT RETENTION AND SUPERVISION

Propst seems to allege that Vasquez intentionally interfered with Propst's employment relationship with Wells Fargo and as such, Wells Fargo negligently retained Vasquez. To state a claim for negligent retention and supervision under North Carolina law, a plaintiff must allege "that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707 (E.D.N.C. 2009) (quoting *Smith v. Privette*, 128 N.C. App. 490, 494–95, 495 S.E.2d 395, 398 (1998)). The claim exists only where an employee has committed an independent tort, and that underlying tort must be one recognized at common law. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003). The notice element, in turn, demands facts showing that the employer knew or had reason to know of the employee's unfitness before the tortious act occurred. A conclusory assertion of knowledge will not do. *Nance v. Rowan-Salisbury Bd. of Educ.*, 336 F. Supp. 3d 593, 598 (M.D.N.C. 2018).

Count III fails on both elements. Propst labels Vasquez's conduct "tortious interference," but the label alone is insufficient to carry the claim. The only thing that makes Vasquez's conduct wrongful in Propst's telling is alleged discriminatory and retaliatory animus, which cannot support

a negligent retention claim, and the Amended Complaint does not plead the elements of tortious interference in any event. And even if a predicate tort existed, the Amended Complaint pleads no facts showing that Wells Fargo knew or should have known of Vasquez's alleged unfitness before she acted.

**1. The Amended Complaint Does Not State a Predicate Common Law Tort**

To the extent Propst attempts to rely on any allegations of discrimination to supply the common law tort necessary for a negligent retention claim, such assertions fail as a matter of law. The Fourth Circuit has held that a negligent retention or supervision claim cannot rest on allegations of discrimination-based harassment or retaliation, "neither harassment or retaliation being common law torts in North Carolina." *McLean*, 332 F.3d at 719. The same is true of § 1981. *Jackson*, 608 F. Supp. 2d at 708 (holding that alleged violations of Title VII and § 1981 "are not common-law torts" and dismissing negligent supervision and retention claim); *see also Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 494 (E.D.N.C. 2020) (harassment or retaliation, "standing alone," cannot sustain the claim); *Webb v. Starbucks Corp.*, No. 1:07cv271, 2008 WL 4891106, at *12 (W.D.N.C. Nov. 12, 2008) (dismissing negligent retention claim for lack of an underlying common law tort under *McLean*). Nor can the allegations in Count I supply the missing tort. Wrongful discharge in violation of public policy "is a tort committed against plaintiff by her employer, rather than employees," and so it cannot be the employee's tortious act on which a negligent retention claim depends. *Whitfield*, 482 F. Supp. 3d at 494. Simply put, neither the allegations supporting Count I nor Count II can carry Count III.

Propst seems to recognize the problem. Rather than rest Count III on his other claims, he recasts Vasquez's supervision as "tortious interference with [his] employment relationship." (ECF 11 at ¶ 148.) The new label changes nothing. Count III rests on the same conduct Propst's

discrimination and retaliation claims, including his unhappiness with his final 2023 mid-year performance rating, Vasquez's treatment of Propst's remote work accommodation, the marginalization of his team, and the pressure to retire. (*Id.* at ¶ 146.) Propst concedes that Vasquez did all of this "within the scope of her supervisory authority and employment with Defendant." (*Id.* at ¶ 147.) The only allegation offered to convert that conduct into a common law tort is the reason Propst gives to it—Vasquez's "personal animus toward [Propst] on account of his age, his sexual orientation, his marriage to a Black man, and his advocacy on behalf of his predominantly Black team." (*Id.*) That is a discrimination theory and is not sufficient to state a negligent retention claim.

A claim built on discrimination and retaliation does not become a common law tort because Propst calls it one. If it did, every allegedly discriminatory rating, reassignment, or remark by a supervisor could be pleaded as "interference" with the employee's employment, and the rule the Fourth Circuit announced in *McLean* would be obsolete. Courts therefore look past the label to whether the employee actually committed a tort recognized at common law. *See Whitfield*, 482 F. Supp. 3d at 494–95 (rejecting negligent supervision claim where asserted predicates were not torts under North Carolina law, were torts of the employer rather than the employee, or were "not pleaded or otherwise fail[ed] to state a claim"); *cf. Keener v. Universal Cos.*, 128 F. Supp. 3d 902, 918 (M.D.N.C. 2015) (holding that plaintiff could not rely on harassment and retaliation allegations and permitting claim to proceed only on alleged common law assault).

Even considering the tortious inference claim, it also fails on its own terms. To state a tortious interference claim, a plaintiff must allege facts showing "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third

person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp. 2d 639, 652 (W.D.N.C. 2005) (internal quotation marks omitted). Each element must be supported by facts; a recitation of the element is not enough. *CSC Emp. Benefits Fiduciary Comm. v. Avera*, No. 5:15-CV-4-BO, 2015 WL 4041333, at *1 (E.D.N.C. July 1, 2015); *Fen-Phen Series 2005-01 v. James S. Farrin, P.C.*, No. 1:09CV479, 2010 WL 1740521, at *4 (M.D.N.C. Apr. 28, 2010). The Complaint fails on all elements.

Propst seems to argue that a contract exists between him and Wells Fargo, and that Vasquez intentionally induced Defendant to terminate Plaintiff's employment. Specifically, Propst claims that "Vasquez intentionally induced Wells Fargo not to continue its employment relationship with Plaintiff." (ECF 11 at ¶ 146.) Propst asserts that by "among other things assigning Plaintiff a performance rating she knew to be unwarranted and unsupported by his actual performance, attacking and undermining his formally approved medical accommodation, marginalizing Plaintiff and his team within the organization, and pressing Plaintiff to retire—thereby rendering the conditions of Plaintiff's employment so intolerable that a reasonable person in his position would have felt compelled to resign, and causing his constructive discharge." (*Id.*)

First, Propst fails to identify a valid contract between Plaintiff and a third person—the only alleged contract here is between Propst and Wells Fargo. Specifically, a "Defendant cannot interfere with its own contract with Plaintiff." *See Nicholson v. Mecklenburg Cnty.*, No. 318-CV-00167-FDW-DCK, 2018 WL 3076787, at *3 (W.D.N.C. June 21, 2018). Propst cannot demonstrate a contract between Plaintiff and a third person. This is fatal to any tortious interference allegation.

Turning to the remaining elements, there are no allegations in the Amended Complaint that Wells Fargo induced a third person not to perform, that Wells Fargo acted without justification (or that Wells Fargo acted at all) or that Wells Fargo caused damage to Propst. Propst's claims fail for each of these reasons. While a plaintiff can prevail on a tortious interference claim against a "non-outsider" to a contract—i.e., a person "who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter"— this claim prevails only if the non-outsider maliciously procured the contract's termination. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282, 292 (1976). "It is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice." *Hubbard v. N.C. State Univ.*, 248 N.C.App. 496, 506, 789 S.E.2d 915, 922 (2016) (internal quotation marks omitted). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (internal quotation marks omitted).

Generally speaking, "'non-outsiders' [to an employment contract] often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty,* 106 N.C.App. 496, 513, 418 S.E.2d 276, 286, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992). To overcome this privilege, Propst would need to show that Vasquez acted with legal malice or acted in her own self-interest. *Robinson v. Proctor & Gamble Mfg. Co.*, No. 1:18-CV-133, 2019 WL 1005504, at *8 (M.D.N.C. Mar. 1, 2019). Moreover, even if this burden is satisfied, the "complaint must admit of no motive for interference other than malice." *Id.*

There are no allegations to suggest Vasquez acted with legal malice. Further, Propst's Amended Complaint also fails to include any facts to suggest that Vasquez caused Wells Fargo to

terminate the alleged employment relationship. *See Lamm v. Branch Banking & Tr. Co.*, 750 F. App'x 189, 191 (4th Cir. 2018). As discussed, Propst's complaint attributes his 2023 mid-year review to, among other things, a forced "bell curve" within the company. (ECF 11 at ¶ 147.) There are also no allegations to suggest that Vasquez's conduct resulted in Propst's termination. Wells Fargo did not terminate its employment relationship with Propst. Instead, Propst's own allegations confirm he retired. (*Id.* At ¶ 146.)

Propst alleges that Vasquez "intentionally induced Wells Fargo not to continue its employment relationship with Plaintiff, and to alter the terms of that relationship to Plaintiff's detriment." (*Id.*) That restates the element. The facts pleaded point the other way. As noted, Wells Fargo did not end the relationship. It continued to employ Propst until he retired. (*Id.*) It did not withdraw his accommodation; it formally re-approved it, and his remote work arrangement "remained in place through Plaintiff's departure." (*Id.* at ¶¶ 27–28.) The Amended Complaint does not allege that Wells Fargo reduced his pay, his bonus, or his benefits. There are no factual allegations that Vasquez induced Wells Fargo to end its relationship with Propst. Propst retired, and he alleges he did so because Vasquez's own conduct as his supervisor made his working conditions intolerable. (*Id.* at ¶¶ 70, 146.) That is a constructive discharge theory, which Propst asserts against Wells Fargo in Count II (*id.* ¶¶ 113-142), and wrongful discharge is "a tort committed against plaintiff by her employer, rather than employees." *Whitfield*, 482 F. Supp. 3d at 494. Where a plaintiff "has alleged no facts" showing inducement and "merely states a legal conclusion," the claim fails. *CSC*, 2015 WL 4041333, at *9.

The justification element fails too. To plead that the defendant acted without justification, the plaintiff must allege facts showing "no motive for interference other than malice." *Braswell*, 352 F. Supp. 2d at 652 (internal quotation marks omitted). A defendant who acts "for a reason

reasonably related to a legitimate business interest" is justified. *Fen-Phen*, 2010 WL 1740521, at *4 (internal quotation marks omitted). A supervisor who rates a subordinate's performance and manages his team is attending to her employer's business, and the Amended Complaint concedes that Vasquez did all of this "within the scope of her supervisory authority." (ECF 1 at ¶ 147, 149.) The Amended Complaint goes further and supplies a business reason itself. It alleges that Vasquez attributed the rating to a forced "bell curve," an evaluation method that assigns a fixed distribution of ratings across a group. (*Id.* at ¶¶ 57, 62, 99, 147.) Propst calls that reason pretext for discrimination (*id.* at ¶ 63), but that returns this into the theory *McLean* forecloses. Apart from that theory, all he offers is the assertion that Vasquez acted "without justification, from personal animus" (*id.* at ¶ 147)—the kind of "bare allegations of malice, devoid of any factual enhancement," that do not state a claim. *Fen-Phen*, 2010 WL 1740521, at *4. Count III therefore states no predicate common law tort, and it fails for that reason alone.

**2. The Complaint Does Not Plausibly Allege That Wells Fargo Knew or Should Have Known of Vazquez's Alleged Unfitness**

Count III fails for a second reason. The employer must have known or had reason to know of the employee's incompetency "prior to the act," and that knowledge must be pleaded with facts, not conclusions. *Nance*, 336 F. Supp. 3d at 597–98. Paragraph 150 does not meet that standard. Propst's complaints and his objections to his team's treatment put Wells Fargo on notice, at most, of alleged discrimination and of disputes over his accommodation. Those are statutory theories that cannot support a negligent retention claim, *see McLean*, 332 F.3d at 719, and notice of alleged discrimination is not notice that Vasquez was unfit in any way that bears on a common law tort. *See Nance*, 336 F. Supp. 3d at 597 (requiring that the injury result from the incompetency of which the employer had notice). The remaining allegation, a "subsequent investigation—prior to August of 2023—of conduct within Vasquez's organization," does not say whose conduct was

investigated, what that conduct was, when the investigation began, or what it found. (ECF 11 at ¶ 150.) An allegation that thin cannot supply the knowledge element.

Propst has pleaded neither a predicate common law tort nor prior notice of Vasquez's alleged unfitness and Count III should be dismissed.

#### 3. Count III Must Also Be Dismissed Due to the Statute of Limitations

Negligent retention and tortious interference claims have three-year statute of limitations. *See* N.C. Gen. Stat. § 1-52(5). Propst complains of conduct that occurred beyond the three-year period before his initial August 10, 2026, complaint. Because his allegations related to Vasquez's conduct all arose prior to August 10, 2023, Wells Fargo respectfully requests the Court grant this motion and dismiss Count III.

### D. COUNT IV: Propst's Allegations Are Insufficient As a Matter of Law To State An Intentional Infliction of Emotional Distress Claim

To support Propst's intentional infliction of emotional distress claim, he maintains that "Vasquez, while acting in her supervisory capacity at Wells Fargo, engaged in a continuous, deliberate, and escalating course of discriminatory harassment, intimidation, humiliation, and retaliatory conduct directed toward Plaintiff." (ECF No. 11 ¶ 154.) In support thereof, he claims that Vasquez's conduct goes beyond "ordinary workplace disagreements, criticism, or disciplinary decisions and included repeated personal attacks upon Plaintiff…." (ECF No. 11 ¶ 155.) Propst's allegations are largely about alleged derogatory remarks made concerning his age and sexuality, pressure related to his accommodation, and apparent conduct intended to undermine Propst's leadership authority. (ECF No. 11 ¶¶ 157-162.) All of these allegations culminate in Propst's claim that Vasquez unfairly gave him a lower than normal mid-year performance review in 2023. (ECF No. 11 ¶ 165.)

This conduct is insufficient as a matter of law to state a claim for intentional infliction of emotional distress in North Carolina. To sustain an IIED claim, a plaintiff must allege, "'1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 732 (M.D.N.C. 2004) (quoting *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992)); *see also Payne v. Nat'l Jewelry & Pawn, Inc.*, No. 1:25CV24, 2026 WL 705064, at *1 (M.D.N.C. Feb. 18, 2026), *adopted*, 2026 WL 701391 (M.D.N.C. Mar. 12, 2026) (stating the same). "Conduct is extreme and outrageous only when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Sheaffer*, 337 F. Supp. 2d at 732 (quoting *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986)); *see also Payne*, 2026 WL 705064, at *1 (stating the same).

Propst's allegations do not approach the high bar North Carolina courts have set "with respect to what constitutes outrageous conduct." *Doe v. Lees-McRae College*, No. 1:20CV105 MR WCM, 2021 WL 1096285, at *8 (W.D.N.C. Feb. 4, 2021), 2021 WL 1093635 (Mar. 22, 2021). North Carolina courts have added that in the employment context, intentional infliction of emotional distress is an "extremely rigorous standard." *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 682 (E.D.N.C. 2013) (citing *Thomas v. Northern Telecom*, 157 F.Supp.2d 627, 635 (W.D.N.C. 2000)).

Propst's complaints of a negative performance review, removal of leadership authority, and general assertions that his supervisor was treating him unfairly are just not enough. *See Soto v. Town of Rolesville*, 729 F. Supp. 3d 533, 551 (E.D.N.C. 2024) (citing *Hogan*, 79 N.C. App. at 493-94, 340 S.E.2d 116) (noting that "no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at

them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains").

Propst's factual allegations do not support any conclusion that anyone at Wells Fargo committed extreme and outrageous conduct that exceeded "all bounds usually tolerated by decent society." *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981). The Amended Complaint lacks any suggestion that Wells Fargo took any intentional action to cause severe emotional distress. The Amended Complaint does not contain factual allegations sufficient to state such a claim. *See Herring*, 2026 WL 2517082, at *6 (granting motion to dismiss intentional infliction of emotional distress claim); *Su v. Matto*, No. 7:20-CV-210-BO, 2021 WL 2345349, at *4 (E.D.N.C. June 8, 2021) ("having to choose between one's health and one's employment has not been determined to rise to the level of extreme and outrageous conduct") (citing *Hogan*, 79 N.C. App. at 494, 340 S.E.2d 116).

It is proper to grant a motion to dismiss in cases like these where the allegations are insufficient as a matter of law to state an intentional infliction of emotional distress claim. *See Hensley v. Walmart Assoc., Inc.*, 2022 WL 17097762, at *3 (W.D.N.C. Nov. 4, 2022) (concluding defendant's alleged "conduct in agreeing to accommodate Plaintiff's disability but then violating such agreement and discharging Plaintiff from employment when she objected to the breach of the accommodation agreement" did not suffice to state a claim for intentional infliction of emotional distress); *report and recommendation adopted*, 2022 WL 17095201 (W.D.N.C. Nov. 21, 2022); *Dunkin v. Marshall Air Sys. Inc.,* 2014 WL 4407043, at *3 (W.D.N.C. Sept. 8, 2024) (finding that "forcing an employee to take leave…coupled with alleged harassment" does not constitute "extreme and outrageous conduct" and explaining that "alleg[ing] facts that are commonplace in

employment discrimination lawsuits…rarely are sufficient to give rise to an actionable IIED claim").

Wells Fargo further submits that Propst's intentional infliction of emotional distress claim is barred by the applicable statute of limitations. The statute of limitations for intentional infliction of mental distress is three years. *Dickens v. Puryear,* 302 N.C. 437, 442, 276 S.E.2d 325, 330 (1981). "Once a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985); *see also Little v. Rose,* 285 N.C. 724, 208 S.E.2d 666 (1974); *see Waddle v. Sparks*, 331 N.C. 73, 85–86, 414 S.E.2d 22, 28–29 (1992).

Propst must allege facts to suggest specific facts that took place after August 10, 2023, three years prior to the filing of his complaint. Propst makes no such allegations. Propst confirms he retired on August 11, 2023. (ECF No. 11, ¶ 72.) All of Propst's allegations regarding intentional infliction of emotional distress arose before August 10, 2023. For this reason, his claim is barred by the statute of limitations.

Propst's attempt to manufacture an IIED claim out of his alleged discrimination claims fall short here and the IIED claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Wells Fargo respectfully asks this Court to dismiss the Plaintiff's First Amended Complaint in its entirety.

Dated: November 12, 2026

Respectfully submitted,

/s/ *Mary Grace Miller*

Mary Grace Miller (NC Bar No. 57395)
Lawrence D. Hilton (NC State Bar No. 64966)
Fisher & Phillips, LLP
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 778-4191
E-mail: mgmiller@fisherphillips.com
Email: lhilton@fisherphillips.com
**ATTORNEYS FOR DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ROBERT PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:26-cv-00655 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO & COMPANY, | ) | DEFENDANTS MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on November 12, 2026, this **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** was served via the court's electronic filing system on all counsel of record.

This the 12th day of November 2026.

Respectfully submitted,

/s/ *Mary Grace Miller*
Mary Grace Miller
**FISHER & PHILLIPS LLP**