**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, CHARLOTTE DISVISION**

| | | |
|---|---|---|
| ROBERT PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:26-cv-00655 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Robert Propst ("Mr. Propst" or "Plaintiff"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7.1(e), files this Response in Opposition to Defendant's Motion to Dismiss (ECF No. 12) and supporting Memorandum (ECF No. 12) (Mem.). [1]to Respondent Wells Fargo's Motion to Dismiss.

## I. INTRODUCTION

Robert Propst gave Wells Fargo and its predecessors thirty-eight and one-half years of service, rose to Senior Vice President, and helped lead the Rebuilding Trust Office team whose work contributed to the lifting of the CFPB Consent Order. Am. Compl. ¶¶ 10-11, 15-19, ECF No. 11. He never received a rating below "Meets Expectations" until, in the fall of 2022, he and his predominately Black team were reassigned to Sandra Vasquez. *Id.* ¶¶ 13, 18, 21-22. What followed, as alleged, was this: Vasquez reacted with "visible surprise, disapproval, and dismay" on learning

[1] Defendant asserts in a footnote that Wells Fargo Bank, N.A., rather than Wells Fargo & Company, employed Mr. Propst, Mem. at 1 n.1. That assertion lies outside the pleading and is not grounds for dismissal under Rule 12(b)(6). Defendant has appeared through counsel and moved on the merits without identifying any prejudice. Should the Court deem a correction necessary, Plaintiff will promptly seek leave to name Wells Fargo Bank, N.A., and the amendment should relate back under Federal Rules of Civil Procedure 15(1)(C).

that Mr. Propst's husband is Black; made sarcastic remarks that the company's "diversity numbers" had improved once his Black team reported to her; refused to meet that team in person despite frequent trips to Charlotte; directed him to lower his Black subordinates' ratings and overrode him when he refused; and, after he complained to her, to Human Resources, and to a senior leader, have him the first negative rating of his career. *Id.* ¶¶ 22, 43-44, 55-56, 61, 118-121. Vasquez acknowledged that the rating was driven by a forced curve and by her dissatisfaction with his predominately Black team and used the review to speed up Mr. Prospt's retirement. *Id.* ¶¶ 62-63. Shortly thereafter, at age sixty-three, Mr. Propst was forced out. *Id.* ¶ 72.

## II. <u>FACTUAL ALLEGATIONS</u>

Mr. Propst joined First Union National Bank in April 1985 and, through successive mergers, remained continuously employed by Defendant until August 2023. Am. Compl. ¶¶ 9-11. He consistently received "Exceeds Expectations" ratings, at times the highest rating, "Far Exceeds Expectations," and never fell below "Meets Expectations" before Vasquez became his manager. *Id.* ¶¶ 12-13. His compensation was approximately $296,000 per year. *Id.* ¶ 14. From 2017 he was one of the original leaders of the Rebuilding Trust Office, building and leading a predominantly Black team that developed the workflows and reporting through which Defendant achieved the lifting of the CFPB Consent Order in September 2021; the team was then assigned to the OCC and Federal Reserve consent-order matters. *Id.* ¶¶ 15-20.

In the fall of 2022, Mr. Propst and his team were reassigned to report to Vasquez, who was based in Chicago. *Id.* ¶¶ 21-22. "Almost immediately," she expressed skepticism about the value of Mr. Propst and his team and, despite frequent travel to Charlotte, "repeatedly declined to meet in person" with his Charlotte-based, predominately Black team. *Id.* ¶ 22. Before Vasquez, neither Mr. Propst nor his team had been subject to discriminatory treatment. *Id.* ¶ 35. In October 2022

Mr. Propst traveled to Chicago at his own expense to raise his concerns about the marginalization of his team; the response was "resistance and retaliation." *Id.* ¶¶ 23-24.

During a one-on-one video call, upon seeing Mr. Propst's husband and realizing that Mr. Propst, a White man, is married to a Black man, Vasquez reacted with "visible surprise, disapproval, and dismay" and remarked that his husband's race "wasn't what [she] expected. *Id.* ¶ 55. On multiple occasions she remarked sarcastically that Defendant's "diversity numbers" had improved after Mr. Propst's predominately Black team came under her supervision. *Id.* ¶ 56. She repeatedly challenged the ratings Mr. Propst gave his Black subordinates while not similarly challenging those he gave his White subordinates, directed him to lower the Black subordinates' ratings, and, when refused as discriminatory, overrode him. *Id.* ¶¶ 46-48, 116-121. Mr. Propst complained to Vasquez, to Human Resources, and to senior leader Ryan Baum that his team was being treated less favorably because of race, and Mr. Propst objected specifically to the ratings to three named team members. *Id.* ¶¶ 33, 41, 43-44, 49-50. No remedial action followed. *Id.* ¶¶ 59, 81, 86, 133. Mr. Propst could not escalate to Vasquez's supervisor, Micheal Cleary, because Cleary had terminated multiple leaders, including Mr. Propst's last three supervisors, who had challenged or "caused problems" for senior leadership. *Id.* ¶¶ 42, 134.

*The rating and the forced departure*. Vasquez also questioned whether Mr. Propst was the oldest person on her team, called his longevity a liability, and asked, "[I]sn't it about time for you to retire?" *Id.* ¶ 37. She pressed him to abandon a remote-work accommodation that Defendant had approved because of Mr. Propst's documented visual impairment, which made a roughly 100-mile round-trip commute dangerous. *Id.* ¶¶ 25-32, 75-77. "Within days after" Mr. Propst's complaint, Mr. Propst who had never been told he was underperforming, received a mid-year 2023 rating of "Inconsistently Meets Expectations," the first negative rating of a career spanning nearly

four decades. *Id*. ¶¶ 61, 69. Vasquez "acknowledged that this rating was driven by a forced 'bell curve' and by Vasquez dissatisfaction with Plaintiff's (predominantly Black) team, rather than by Plaintiff's actual performance," and Vasquez's comments during the review, including references to retirement and age, "made clear that the rating was pretextual and was intended to force Plaintiff out. *Id*. ¶¶ 62-63. The rating "confirmed to Plaintiff that Defendant had determined to force him out and that no remedial action would be taken." *Id*. ¶ 71. On or about August 11, 2023, Mr. Propst was "forced into early retirement and thereby constructively discharged," despite his intention and ability to work until age sixty-seven. *Id*. ¶ 72. Defendant placed Jim Merrick, a substantially young, straight, White man, in Mr. Propst's former role or a substantially similar one without posting the position; Merrick later made racially derogatory comments about Mr. Propst's former team and was investigated for them. *Id*. ¶¶ 88-91. Mr. Propst alleges economic losses exceeding $1.2 million and diagnosed anxiety and depress that required increased treatment. *Id*. ¶¶ 92, 170-173.

## III. <u>LEGAL STANDARD FOR MOTION TO DISMISS</u>

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint; "importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)(quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The court assumes the truth of all facts alleged and the existence of any fact that can be proved consistent with the complaint's allegations. *Eastern Shore Mkt., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"

*Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff satisfies this standard "not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements." *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012).

In employment cases, the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). A § 1981 plaintiff "need not plead a prima facie case of discrimination[,]" but must allege facts supporting the elements of the claim. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citation omitted); see Mem. at 7. And because a limitations bar is an affirmative defense, a Rule 12(b)(6) motion "generally cannot reach the merits" of it, except in the rare case where "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.;" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citation omitted).

## IV. ARGUMENT

### a. Count I States Claims for Associational Race Discrimination and Retaliation Under 42 U.S.C. § 1981

Defendant does not dispute that § 1981 protects a White employee who suffers discrimination because of an interracial relationship or association. Mem. at 6. The Fourth Circuit has long so held. *Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253*, 258 (4th Cir. 2001) ("It is well-settled that a claim of discrimination based on a interracial relationship or association is cognizable under" § 1981.) (citation omitted); *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1149-50 (4th Cir. 1980) (white plaintiffs had standing, and "it is settled that the nature of the discrimination in this case – taking adverse action against a white person because of his association with blacks – falls under" § 1981). Other circuits agree. *Faraco v. Clements*, 506 F.2d 956, 958-59 (5th Cir. 1975) (white applicant refused employment because his wife was Black; director had voiced "grave concern about the effects of the racially mixed couple"); *Parr v. Woodmen of the*

*World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986) ("[Section 1981] prohibits discrimination based upon an interracial marriage or association."). Such claim is a race claim: "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race." *Parr*, 791 F.2d at 892 (Title VII; noting the elements of Title VII and § 1981 claims pleaded in parallel "are identical").

Mr. Propst alleges precisely this. He is a White man married to a Black man who built, led, and championed a predominantly Black team, and he alleges that Defendant, through Vasquez, discriminated against him because of those race-based associations. Am. Compl. ¶¶ 54-58, 101, 105-107. The only questions are whether he has plausibly alleged an adverse action and causation. He has.

**i. The Amended Complaint Plausibly alleges an adverse action: a constructive discharge, culminating a campaign that used a first-ever negative rating as its instrument.**

Plaintiff alleges that Defendant's race-based treatment culminated in Mr. Propst's constructive discharge. Am. Compl. §§ 102, 107. A discharge is the paradigmatic adverse action, and an employee who resigns in the face of intolerable condition is treated as "tantamount to an actual discharge." *Green v. Brennan*, 578 U.S. 547, 555 (2016). Defendant agrees that constrictive discharge "is an avenue for a plaintiff to demonstrate an adverse employment action." Mem. at 7. The loss of a thirty-eight-year career and roughly $296,000 in annual compensation, Am. Compl. §§ 14, 92, is more than the "some harm respecting an identifiable term or condition of employment" that *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024), requires.

"An employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.' " *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (quoting *Martin v. Cavalier Hotel* Corp., 48 F.3d 1343, 1354 (4th Cir. 1995). "A plaintiff alleging **constructive discharge** must [ ]

prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (citations omitted). "To prove deliberateness, the plaintiff must prove ‘that the actions complained of were intended by the employer as an effort to force the employee to quit.’ " *Id*. (quoting *Martin*, 48 F.3d at 1354 ). "To act deliberately ... requires intent ... to force an employee to leave ... [which] [i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions,...." *Bristow v. Daily Press, Inc*., 770 F.2d 1251, 1255 (4th Cir. 1985) (quoting *Holsey v. Armour & Co*., 743 F.2d 199, 209 (4th Cir. 1984) ; *J.P. Stevens & Co., Inc. v. NLRB*, 461 F.2d 490, 494 (4th Cir. 1972) ); see also *Martin*, 48 F.3d 1343, 1356 (4th Cir. 1995) (Employer may "prove her employer's intent by demonstrating that her resignation was the "reasonable foreseeable consequence" of the employer's conduct ...."). "Intolerability ... is assessed by the objective standard of whether a ‘reasonable person’ in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255 (citations omitted). "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Id*.

Plaintiff was a senior executive with thirty-eight and one-half years of exemplary reviews and received his first negative rating from a supervisor who admitted it was driven by a forced curve and by Vasquez’s dissatisfaction with his predominantly Black team, and who used the same review to raise Mr. Propst’s age and retirement. Am. Comp.l. §§ 12-13, 61-63. That rating followed a sustained course of marginalization of Mr. Propst and his team, the overriding of his evaluations of Black subordinates, public remarks about his marriage and age, and repeated pressure to abandon an approved accommodation. *Id*. ¶¶ 22-24, 37, 51-53, 55-56, 60, 118-121, 125-132. His complaints to Vasquez, Human Resources, and Baum produced no remedial action, and the only

higher authority, Cleary, had fired Mr. Propst's last three supervisors for challenging leadership. *Id*. ¶¶ 42, 59, 71, 133-134. A reasonable person in that position could conclude that the company decided to push him out and that seek redress was futile. This is why the rating "confirmed to Plaintiff that Defendant had determined to force him out." *Id*. ¶ 71. Those allegations also plead deliberateness. *Id*. ¶¶ 63, 83. In *Amirmokri v. Baltimore Gas & Electric Co.*, 60 F.3d 1126, 1132-35 (4th Cir. 1995), on which Defendant relies, Mem. at 10, the Fourth Circuit explained that the employer's intent "may be shown by evidence that an employee's resignation was the reasonably foreseeable consequence of the employer's conduct," that an employer "may not insulate itself entirely from liability by taking some token action," and that where a reasonable trier of fact could find the conditions intolerable the question belongs to the factfinder. *Id*. A supervisor who asks a sixty-three-year old executive whether it is "about time" to retire, and hands him a rating she admits was driven by a quota and by hostility toward his Black team, can foresee that he will leave; and Defendant, on the allegations, took no action at all. Am. Compl. ¶¶ 37, 59, 62-63. That rating followed a sustained course of marginalization of Mr. Propst and his team, the overriding of his evaluations of Black subordinates, public remarks about his marriage and age, and repeated pressure to abandon an approved accommodation. Id. ¶¶ 42, 59, 71, 133-134. A reasonable person in that position could conclude that the company had decided to push him out and that seeking redress was futile. This is why the rating "confirmed to Plaintiff that Defendant had determined to force him out." *Id*. ¶ 71. Those allegations also plead deliberateness. Id. ¶¶ 63, 83. Whether a reasonable person would have felt compelled to resign is an objective, fact-bound question that cannot be resolved against the pleader on a motion to dismiss. See *Edwards*, 178 F.3d at 243.

Defendant's contrary showing is built on subtraction. It sets aside every allegation "the Amended Complaint attributes to age, disability, and to sexual orientation" and then evaluates

the "five allegations" that remain. Mem. at 8-9. That is not how plausibility is assessed. The Court draws on "judicial experience and common sense" in considering the complaint as a whole, *Iqbal*, 556 U.S. at 679, and Defendant's own authority contemplates that race-related allegations may be "woven together" to suggest a "general pattern" of discrimination where they are linked to the challenged decision. *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 400 (4th Cir. 2021) (cited at Mem. at 12-13). Nor does Defendant's claim that the allegations "span years," Mem. at 9, survive a reading of the pleading: Vasquez became Mr. Propst's supervisor in the fall of 2022 and he left in August 2023. Am. Compl. ¶¶ 21, 72.

Defendant's authorities do not hold otherwise. *Perkins, Evans v. Int'l Paper Co.*, 936 F.3d 183, 192-93 (4th Cir. 2019), and *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006), describe the ordinary frictions of the workplace – being yelled at, criticized, or ignored. Mem. at 8-9. Mr. Propst alleges something different in kind: a rating that his supervisor admitted was driven by animus toward his Black team. That was coupled with a quota and with an invitation to retire, imposed on a thirty-eight-year Senior Vice President after he opposed race discrimination, with no avenue for redress. And whether conditions are "beyond 'ordinary' discrimination," *Evans*, 936 F.3d at 193 (quoted at Mem. at 8), is a question of degree on which Mr. Propst is entitled to develop a record.

The rating is independently actionable. *Muldrow* rejected any requirement that the harm be "significant"; some harm to an identifiable term or condition suffices. 601 U.S. at 354-55. Defendant's lead authority on evaluations, *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004), predates *Muldrow* and in any event asks whether the employer used the evaluation "as a basis to detrimentally alter the terms or conditions" of employment. That is what Mr. Propst alleges: the rating was the instrument "intended to force Plaintiff out," was designed to

"jeopardize his continued employment, and pressure him into premature retirement," and posed a "direct threat to his compensation and professional standing." Am. Compl. §§ 63, 70, 83. Defendant argues that Mr. Propst cannot allege collateral consequences because he left a month later. Mem. at 11. But the consequence he alleges is forced departure itself, which cannot treat as both the reason the rating caused no harm and a voluntary act.

**ii. Race and Race-Based Association are But-For Cause of the Challenged Conduct**

Defendant argues that Mr. Propst's but-for allegation is a "legal conclusion." Mem. at 12 (citing Am. Compl. ¶ 107). But ¶ 107 is the conclusion drawn from the facts, not a substitute for them. Section 1981 requires that "but for race, [the plaintiff] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Ass'n of Afr. Am. -Owned Media*, 589 U.S. 327, 341 (2020), and at the pleading stage the question is only whether the facts make that inference plausible. See *Twombly*, 550 U.S. at 556. They do.

First, Vasquez's own words and conduct tie the adverse treatment to race and association. When she discovered that Mr. Propst's husband is Black, she reacted with "visible surprise, disapproval, and dismay" and said his race "wasn't what [she] expected." Am. Compl. ¶ 55. That sequence – an employer learns of an interracial relationship and then acts against the employee – is the kind of circumstantial evidence the Fourth Circuit credited in *Murrell*, where the motel evicted the interracial party "promptly" after discovering its composition. 262 F. 3d at 259; cf. *Faraca*, 506 F.2d at 958 (director refused to hire applicant after expressing "grave concern about the effects of the racially missed couple"). She repeatedly remarked that the company's "diversity numbers" had improved after Mr. Propst's Black team came under supervision, refused to meet that team, and scrutinized and overrode his evaluations of Black subordinates but not White ones.

Am. Compl. ¶¶ 22, 46-48, 56-58, 116-121. And by her own acknowledgment, the rating was driven by "her dissatisfaction with Plaintiff's (predominantly Black) team." *Id.* ¶ 62.

Second, the context supports the inference. Mr. Propst had no comparable concern under his three prior supervisors and had never been rated below "Meets Expectations" in thirty-eight years. *Id.* ¶¶ 13, 35, 44. The first negative rating of his career came within months of Vasquez's arrival and "[w]ithin days after" his complaints. *Id.* ¶¶ 61, 69. Defendant then installed a substantially younger, straight, caucasian man in his role without posting the position, and that successor later made racially derogatory remarks about the same team. *Id.* ¶¶ 88-91.

Third, Defendant's *Lemon* comparison fails. There, a single remark about the plaintiff "play[ing] the black card" was the only race-specific fact, and nothing linked it to the leave decision. 985 F.3d at 400 (quoted at Mem. at 12). Here the allegations are numerous, specific, and tied to the challenged conduct, including Vasquez's admission about the rating. Defendant's complaint that the pleading lacks dates for the remarks, Mem. at 13, asks for more than Rule 8 requires, particularly where the entire period at issue is approximately eleven months ago. Am. Compl. ¶¶ 21, 72.

Fourth, the observation that the Amended Complaint also alleges age, sexual-orientation, or quota-based motives, Mem. at 13, does not defeat but-for cause. "Often, events have multiple but-for causes," *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020), and Rule 8(d)(2)-(3) expressly permits alternative and even inconsistent theories. In *Parr*, the employer argued that the plaintiff's own race was irrelevant because it would not have hired him even had he been Black; the court rejected the argument, observing that "Title VII proscribes race-conscious discrimination practices." 791 F.2d at 892. An associational claim is race-conscious by its nature. *Id.*

### iii. The Amended Complaint states a claim for retaliation under § 1981.

A § 1981 retaliation claim requires protected activity, a materially adverse action, and causation. Mem. at 13 (citing *High v. Wells Fargo Bank*, No. 3:21cv81, 2023 WL 2505540, at *13 (E.D. Va. Mar. 14, 2023)). Defendant does not dispute that § 1981 protects a White employee who is punished for opposing discrimination against Black colleagues, and the law is settled on the point. In *CBOCS West, Inc. v. Humphries*, the Supreme Court held that § 1981 "encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right,'" 553 U.S. 442, 445 (2008), grounding that rule in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), where a white lessor was punished for trying to vindicate the rights of a Black lessee. *CBOCS*, 553 U.S. at 446-47. The Court called the rule "well embedded in the law." *Id*. at 451. See also *Fiedler*, 631 F.2d at 1154 (directing judgment for white plaintiffs on liability where school expelled a second child after her father contacted the NAACP).

Protected activity. Mr. Propst alleges that he complained to Vasquez, Human resources, and Baum that his Black team members were being treated less favorably "because of their race," objected to named employees' ratings as racially disparate, and refused to implement what he believed were discriminatory rating reductions. Am. Compl. ¶¶ 43-44, 49-50, 66, 99, 119-123. That is classic opposition activity, which includes complaints made through informal channels when the employer "understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Schrof*, 2023 WL 3763984, at *6 (citation omitted). Defendant's own authority confirms that such complaints qualify. *See* Mem. At 13-14 (citing *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015)). Defendant's objection that the pleading does not date each complaint, Mem. at 14, again demands more than Rule 8, and its assertion that the complaints

spanned "the last couple of years" of Mr. Propst's employment, *id.*, ignores that his complaints concern Vasquez, who arrived in the fall of 2022. Am. Compl. ¶¶ 21, 35, 44.

An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoted at Mem. at 14). The standard is broader than the "terms and conditions" test, and a constructive discharge plainly meets it. So does a first-ever negative rating, delivered to a thirty-eight-year Senior Vice President with a retirement reference, that the supervisor admitted was driven by hostility toward the team he defended. Defendant's cases, *Bradley* and *Barnhill*, Mem. at 14-15, involved evaluations with no alleged resulting injury or that were later reserved. Here the alleged consequence was the end of Mr. Propst's career.

Plaintiff alleges that the hostility, the first negative rating of his career, and the intolerable conditions began "[w]ithin days after" his complaints, that these actions occurred only after Mr. Propst "began fighting for equitable, non-discriminatory treatment for his subordinates," and that Vasquez knew of his opposition. Am. Compl. ¶¶ 51-53, 65, 68-69, 103, 108. Close temporal proximity between protected complaints and an adverse action "permits a reasonable inference of retaliation." *Shrof*, 2023 WL 3763984, at *7. Defendant's reliance on a District of South Carolina decision about "vague allegations without reference to timeframe," Mem. at 15, is misplaced: the Amended Complaint pleads a sequence – complaints, escalating hostility, the rating "within days," and departure within the following weeks – all within a single year. The retaliation was based on Plaintiff's complaint about the discriminatory treatment of his all black team. Thus, race or race association was the but-for cause of the retaliation.

**b. Constructive Discharge Pursuant to 42 U.S.C. 1981**

Plaintiff does not dispute that constructive discharge is not an independent cause of action

but is "an avenue for a plaintiff to demonstrate an adverse employment action." Mem. at 7; *see Schrof*, 2023 WL 3763984, at *7. Its heading and body allege "unlawful retaliation resulting in constructive discharge in violation of 42 U.S.C. § 1981." Am. Compl. ¶ 142; *see id*. §§ 112-141. Count II therefore does not seek "a separate claim of a constructive charge" divorced from a substantive violation; it alleges the substantive § 1981 retaliation violation and identifies the constructive discharge as its adverse action. Count I does the same in its associational-discrimination and retaliation theories. *Id*. ¶¶ 102, 107-108.

The Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2012) (per curiam). The Fifth Circuit applied the same principle in a § 1981 case: although the action "was not denominated as one for tortious interference with the making of a contract," "this lack of formality is not fatal since the basic right to relief has been declared to exist," *Faraca*, 506 F.2d at 959. The decision on which Defendant principally relies illustrates the point: in *Schrof*, the court dismissed a standalone constructive-discharge count but denied the motion as to the plaintiff's discrimination and retaliation counts, which proceeded. 2023 WL 3763984, at *1, *7-8.

Defendant's alternative argument that Count II's allegations of intolerability and deliberateness are insufficient, Mem. at 16-18, fails for the reasons state in Part IV.a.ii above. The Amended Complaint alleges the objective conditions, Mr. Propst's actual resignation because of them, and Defendant's deliberate use of the rating and its refusal to remedy the conduct. Am. Compl. ¶¶ 59, 63, 70-72, 83, 133-139. Defendant also faults Count II for pleading Vasquez's "heightened scrutiny" of Black subordinates without showing it made Mr. Propst's own condition intolerable. Mem. at 17. That argument ignores the retaliation that followed his opposition to that scrutiny, which is the core of this pleading. Am. Compl. ¶¶ 119-132.

### c. Negligent Retention and Supervision with Tortious Inference by Supervisor

To state a claim for negligent retention or supervision under North Carolina law, a plaintiff must allege that "the employer knew or had reason to know of the employee's incompetency." *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707 (E.D.N.C. 2009) (quoting *Smith v. Privette*, 128 N.C. App 490, 494-95, 495 S.E.2d 395, 398 (1998)); see *McLean v. Patten Cmtys., Inc*., 332 F.3d 714, 719 (4th Cir. 2003). Count III satisfies both elements.

Defendant's principle argument is that discrimination and retaliation are not common-law torts. Mem. at 19. That is correct, and besides the point. *McLean* held that a negligent-retention claim cannot rest on harassment or retaliation, "neither harassment or retaliation being common law torts in North Carolina." 332 F.3d at 719 (quoted Mem. at 19). *Jackson* and *Whitfield* likewise rejected Title VII and § 1981 violation predicates. Mem. at 19. Count III does not rely on any of them. It alleges a different and indisputably common-law tort: Vasquez's intentional, unjustified interference with Mr. Propst's employment relationship. Am. Compl. ¶¶ 144-149. That same course of conduct may also be actionable under § 1981 does not strip it of its common-law character, and Rule 8(d)(2)-(3) permits overlapping theories. Defendant's own authority recognizes that the question is whether a recognized common-law tort is pleaded. *See* Mem. at 20 (citing *Keener v. Universal Cos.*, 128 F. Supp. 3d 902, 918 (M.D.N.C. 2015)) (permitting claim to proceed on alleged common-law assault).

Tortious inference with contract requires "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so act without justification; (5) resulting in actual damage

to plaintiff." *Braswell v. Haywood Reg'l Med. Ctr*., 352 F. Supp. 2d 639, 652 (W.D.N.C. 2005) (internal quotations marks omitted) (quoted at Mem. at 20-21). Each element is pleaded with facts.

Mr. Propst's employment with Wells Fargo conferred contractual right to base compensation, annual bonus, merit increases, and benefits. Am. Compl. ¶¶ 14, 144, and Vasquez know of the relationship and its terms. *Id*. ¶ 145. Defendant argues that a "Defendant cannot interfere with its own contract with Plaintiff." Mem. at 21 (quoting *Nicholson v. Mecklenburg Cnty*., No. 3:18-CV-00167-FDW-DCK, 2018 WL 3076787, at *3 (W.D.N.C. June 21, 2018)). That argument confuses the tortfeasor with the defendant. The interfering party is Vasquez, an individual who is not party to Mr. Propst's contract; Wells Fargo is sued for negligently retaining her. Count III does not allege that Wells Fargo interfered with its own contract.

The Amended Complaint alleges that Vasquez "intentionally induced Wells Fargo not to continue its employment relationship with Plaintiff, and to alter the terms of the relationship to Plaintiff's detriment," by assigning a rating "she knew to be unwarranted," attacking his approved accommodation, marginalizing him and his team, and "pressing Plaintiff to retire." Am. Compl. ¶ 146. These are factual allegations supported elsewhere in the pleading. Id. ¶¶ 22-24, 29-32, 37, 61-63, 75-77. Defendant's answer is that Wells Fargo "did not end the relationship" because Mr. Propst retired. Mem. at 23. But a constructive discharge is treated as "tantamount to an actual discharge." *Green*, 578 U.S. at 555, a proposition Defendant itself invokes. Mem. at 7. Defendant's observations that it kept Mr. Propst's accommodation and paid him until he left, Mem. at 23, go to whether his conditions were intolerable, not to whether Vasquez induced the loss of his job. Am. Compl. ¶¶ 87, 92.

A supervisor is a "non-outsider" with a qualified privilege to induce his or her employer's conduct, but the privilege is lost where the supervisor acts with "legal malice," that is, "does a

wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties," or acts in her own self-interest. *Hubbard v. N.C. State Univ.*, 248 N.C. App. 496, 506, 789 S.E.2d 915, 922 (2016) (internal quotation marks omitted) (quoted at Mem. at 22); *see Smith v. Ford Motor Co*., 289 N.C. 71, 221 S.E.2d 282, 292 (1976); *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992). Plaintiff alleges that Vasquez acted "without justification, from personal motives and animus," "not in furtherance of any legitimate business interest of Defendant," and contrary to Wells Fargo's own interest in retaining the Senior Vice President who had led its effort to lift the CFPB Consent Order. Am. Compl. ¶ 147. It alleges that she knowingly assigned an unwarranted rating, *id*. ¶ 146, and that she told Mr. Propst the rating was driven by a quota and by her dissatisfaction with his Black team, *id*. ¶ 62. Those facts plausibly allege a wrongful act undertaken for personal reasons, not for her employer's benefit.

Defendant says the Amended Complaint "supplies a business reason itself" because Vasquez attributed the rating to a forced "bell curve." Mem. at 24. That reads ¶ 62 selectively. Plaintiff alleges that Vasquez acknowledged the rating was driven by the curve and by her dissatisfaction with Mr. Propst's Black team, and that her references to retirement and age "made clear that the rating was pretextual." Am. Compl. ¶¶ 62-62. A factfinder who credits those allegations could reject the stated justification. Whether Vasquez acted from a legitimate business reason is a factual question that a motion to dismiss "does not resolve." *Edwards*, 178 F.3d at 243. Defendant's alternative argument that the claim merely restates wrongful discharge, a tort "committed against plaintiff by her employer, rather than employee," Mem. at 23 (quoting *Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 494 (E.D.N.C. 2020)), fails for the same reason it fails on the "own contract" point: the tort alleged is Vasquez's, not the employer's.

#### i. Wells Fargo knew or should have known of the conduct.

Defendant argues that Plaintiff does not plausibly allege that Wells Fargo knew of Vasquez's unfitness "prior to the act." Mem. at 24-25 (citing *Nance v. Rowan-Salisbury Bd. of Educ.*, 336 F. Supp. 3d 593, 597-98 (M.D.N.C. 2018)). Wells Fargo received Mr. Propst's complaint of discrimination and interference with his approved accommodation, made to Vasquez, to Human Resources, and to Baum; received his objections to the rating Vasquez assigned his team; and conducted its own investigation, before August 2023, of conduct with Vasquez's organization. Am. Comp. ¶¶ 41, 43-44, 86, 150. Defendant says notice of "discrimination" is not notice of unfitness bearing on a common-law tort. Mem. at 24. But the conduct Mr. Propst reported – selective undermining of his team, interference with his accommodation, and pressure to retire – is the same conduct that constitutes the interference. Because Vasquez's conduct was a "continuous and escalating pattern, *id*, ¶ 73, noted of that conduct preceded the rating and the constructive discharge, which are the acts that caused the injury. And Defendant's demand to know "whose conduct was investigated, what that conduct was, when the investigation began, or what it found," Mem. at 24-25, seeks facts uniquely within Wells Fargo's possession. Rule 9(b) permits knowledge to be alleged generally, and *Twombly* does not require a plaintiff to plead what only discovery can reveal. 550 U.S. at 556.

#### ii. Statute of Limitations

Defendant's limitations argument on Count III is a single short paragraph. Mem. at 25. It asserts that because Vasquez's conduct "all arose prior to August 10, 2023," the three-year period under N.C. Gen. Stat. § 1-52(5) has run. *Id*. The argument fails for four reasons.

First, limitations is an affirmative defense, and dismissal on that basis is proper only if "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'"

*Goodman*, 494 F.3d at 464 (citation omitted). They do not. The Amended Complaint does not allege the date of the filing of the original complaint (a fact Defendant supplies from outside the pleading), the date on which Mr. Propst have notice of his departure, or the date of the rating and individual remarks.

Second, on Defendant's own account, the claim is timely. The tortious-interference and negligent-retention claims were not complete until Mr. Propst suffered "actual damage." *Braswell*, 352 F. Supp. 2d at 652. The Amended Complaint alleges that the damage (the loss of his job and compensation) occurred when he was constructively discharged on or about August 11, 2023. Am. Compl. ¶¶ 72, 87, 92. Defendant itself states that Mr. Propst "retired on August 11, 2023," Mem. at 28, and that his original complaint was filed on August 10, 2026. Mem. at 25. August 11, 2023, falls within the three years proceeding August 10, 2026. Defendant's assertion that all the conduct predates August 10, 2023, overlooks the injury that completed the tort. And under *Green*, the constructive discharge itself is the "matter alleged to be discriminatory" for purposes of when the limitations period begins to run. *See Schrof*, 2023 WL 3763984, at *7 (describing *Green*).

Third, the claim in the Amended Complaint relate back to the original complaint because they "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *See* Am. Compl. At 1 (amending under Rules 15(a) and 15(c)). Defendant measures timeliness from the original filing date, Mem. at 25, and therefore does not argue otherwise.

Fourth, even if some discrete earlier acts were independently time-barred as stand-alone claims, that would not warrant dismissing Count III, which rests on the course of conduct and resulting injury that culminated within the limitations period.

**d. North Carolina Law of Intention Infliction of Emotion Distress**

A claim for intentional infliction of emotional distress requires "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 732 (M.D.N.C. 2004) (quoting *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992)) (cited Mem. at 26). Plaintiff acknowledges that the standard is demanding in the employment setting. But whether conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery" is a threshold question for the court, and "[w]here reasonable men may differ, it is for the jury, subject to the control of the court," to decide it. Restatement (Second) of Torts § 46 cmt. h (Am. L. Inst. 1965).

Extreme and outrageous conduct. Defendant characterizes Count IV as a complaint about "a negative performance review, removal of leadership authority, and general assertions that his supervisor was treating him unfairly." Mem. at 26. The Amended Complaint alleges considerably more. It alleges that Vasquez, a supervisor with power over a thirty-eight-year Senior Vice President, subjected him to "derogatory remarks concerning Plaintiff's age and sexuality in the presence of his colleagues and subordinates," expressed disapproval on learning that he is married to a Black man, and did so to embarrass him in front of his peers. Am. Compl. ¶¶ 55, 60, 79, 157-158. It alleges that she knew his documented visual impairment made driving in darkness and inclement weather unsafe, and that she nonetheless repeatedly pressed him to abandon his medially approved accommodation and commute approximately 100 miles round trip, despite his repeated explanation of the danger. *Id.* ¶¶ 29-30, 75-77, 159-161. And it alleges that she assigned a rating she knew to be unwarranted to pressure him into leaving. *Id.* ¶¶ 63, 83, 146, 165.

The Restatement identifies the circumstances that distinguish such conduct from ordinary workplace friction: it may be extreme and outrageous where it arises "from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the

other, or power to affect his interests," or from "the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Restatement (Second) of Torts § 46 cmt. e, f. Both are alleged. Defendant's cases, which involve discrete employment decisions or shouting and profanity, Mem. at 26-27 (citing *Soto*, *Hensley*, and *Dunkin*), do not address a sustained campaign by a supervisor that exploited a known disability and used humiliating remarks about the employee's sexual orientation and marriage. Whether the conduct, taken as a whole, was beyond all bounds of decency is a question on which reasonable minds may differ, and it should not be resolved on the pleadings.

Plaintiff alleges that Vasquez knew or acted with reckless indifference to the likelihood that her conduct would cause severe emotional distress, Am. Compl. ¶¶ 85, 167, 175, and that Mr. Propst suffered anxiety and depression for which he sought professional treatment and increased the frequency of his therapy. *Id.* ¶¶ 170-173. Defendant does not challenge the distress element. North Carolina defines severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 372 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Defendant argues that Vasquez is not a defendant and that the Amended Complaint does not allege that Wells Fargo took intentional action. Mem. at 27. But an employer is answerable for an employee's torts committed within the scope of employment or later ratified. *See Medlin v. Bass*, 327 N.C. 587, 592, 398 S.E.2d 460 (1990) (listing liability for acts "ratified by the principal"). Plaintiff alleges that Vasquez acted in her supervisory capacity and within the course and scope of her employment, and that Wells Fargo, with notice of the conduct through Human

Resources and senior management, failed to act and thereby endorsed, authorized, and ratified it. Am. Compl. ¶¶ 86, 147, 149, 154, 166, 168, 176.

#### i. Statute of Limitations

Defendant's limitations argument on Count IV is the same as on Count III and fails for the same reasons. Mem. at 28. The three-year period for intentional infliction of emotional distress, *Dickens v. Puryear*, 302 N.C. 437, 439, 276 S.E.2d 325, 327 (1981), is measured from the filing of the original complaint on August 10, 2026, which Defendant accepts. Defendant's demand that Mr. Propst identify "specific facts that took place after August 10, 2023" is answered by Defendant's own recital that "Propst confirms he retired on August 11, 2023." Mem. at 28. Plaintiff alleges a "continuous, deliberate, and escalating course" of conduct that continued until Mr. Propst's forced departure on that date and contributed to it. Am. Compl. ¶¶ 72, 154, 174. Defendant's statement that "[a]ll of Propst's allegations regarding intentional infliction of emotional distress arose before August 10, 2023," Mem. at 28, is a factual assertion contradicted by its own concession. Defendant's reliance on *Pembee Manufacturing Corp. v. Cape Fear Construction Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985), for the proposition that the plaintiff must offer "a forecast of evidence," Mem. at 28, invokes the language of summary judgment. On a Rule 12(b)(6) motion, the Court considers only the pleading, and dismissal is warranted only if the bar "clearly appear[s] on the face of the complaint." *Goodman*, 494 F.3d at 464. It does not here. As with Count III, the claim also relates back to the original complaint. Fed. R. Civ. P. 15(c)(1)(B).

## V. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

This the 25th day of November, 2026

/s/Lawrence Wooden
Lawrence Wooden
State Bar No. 47199
HW Legal Group
10130 Mallard Creek Rd., Suite 300
Charlotte, NC 28262
Telephone: 704-665-5838
*Attorney for Plaintiff*

/s/Omar Bradford
Omar Bradford, Esq.
FL State Bar No. 90444
The Advisory PLLC
5100 Popular Avenue, Suite 2700
Memphis, TN 38137
Telephone: 347-224-7144
*Pro Hac Vice Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, I electronically filed the foregoing PLAINTIFF'S BRIEF IN RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Mary Grace Miller
Lawrence Hilton
Fisher & Phillips, LLP
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
mgmiller@fisherphillips.com
lhilton@fisherphillips.com
Attorneys for Defendant

/s/Lawrence Wooden
Lawrence Wooden